[No. C001271. Third Dist. Nov. 18, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY LAMALE GASTILE, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* The Reporter of Decisions is directed to publish all of the opinion except part IV.

COUNSEL

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DEEGAN, J.*—Defendant appeals from his conviction, following a court trial, of two counts of first degree murder (Pen. Code, § 187)[1] and one count of attempted murder (§§ 187, 664). In addition, the trial court sustained a special circumstance allegation for multiple murder (§ 190.2, subd. (a)(3)) as well as allegations of firearm use for each of the three counts (§§ 1203.06, subd. (a)(1), 12022.5) and infliction of great bodily injury for the attempted murder count (§ 12022.7). The court sentenced defendant to two

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

[1] Unless otherwise indicated, further statutory references are to the Penal Code.

concurrent terms of life imprisonment without the possibility of parole, consecutive to a determinate term of 12 years for the attempted murder count and sentence enhancements. On appeal, defendant contends the trial court erroneously failed to (1) obtain a waiver of his right to a jury trial on the special circumstance allegation, (2) suppress his confession, and (3) recite the proper standard of proof for the determination of the voluntariness of his confession. We affirm.

## I

On the morning of November 16, 1984, at about 7:30 a.m., defendant shot his sister, Jenethel, and her four-year-old and thirteen-year-old daughters, Shawnae and Crystal, in the living room of his mother's home. The girls died but their mother survived. However, Jenethel is permanently blind as a result of the gunshot wound. Defendant placed the victims in his car and dumped them in a nearby creek.

At about 9 a.m., Deputy Sheriff Lloyd Baker responded to a call of a multiple shooting. Deputy Baker approached the area of the shooting at about 10 a.m. and chanced upon defendant, who was driving a tractor along a county road. Defendant called out that he was the person for whom the police were looking.

Deputy Baker handcuffed defendant and placed him in the back of the patrol car, but did not advise him of his constitutional rights. Baker told defendant, "What I need to know is where the girls are so I can get help to them." Defendant responded that the girls were dead. Baker continued to ask where the girls were as he drove back in the direction from which the tractor came, following a trail of mud. Defendant directed Baker to the creek where his car was stuck in the mud. In response to Baker's question, defendant indicated the girls were outside the car. Baker then found the victims in the creek.

Baker turned defendant over to other officers, who transported him to the sheriff's department. At 11 a.m., sheriff's officers read defendant his "*Miranda* rights"[2] for the first time. Defendant waived his rights and gave a full confession.

## II

On November 25, 1985, defendant waived his right to a jury trial in exchange for the prosecution's agreement not to seek the death penalty.

---

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

However, the trial court neglected to obtain a jury trial waiver of the allegation of a special circumstance. On December 9, 1985, the court recognized the omission and brought it to the attention of counsel. Both the district attorney and defendant's two public defenders indicated they believed such a waiver was unnecessary. One public defender stated that because of the district attorney's promise not to ask for the death penalty, there would be no penalty phase; thus, the special circumstance allegation would be decided during the guilt phase and there was nothing for defendant to waive.

Defendant's appellate counsel argues the trial court committed per se reversible error by failing to obtain defendant's waiver of his right to a jury trial on the special circumstance allegation. The People respond that defense counsel invited the error and the error is not prejudicial.

█ The California Supreme Court has construed section 190.4 as guaranteeing a right to a jury trial on special circumstance allegations unless that right is personally and separately waived.[3] (*People* v. *Memro* (1985) 38 Cal.3d 658, 704 [214 Cal.Rptr. 832, 700 P.2d 446]; see also *People* v. *Granger* (1980) 105 Cal.App.3d 422, 428 [164 Cal.Rptr. 363].) The trial court erred in failing to obtain a separate jury waiver from defendant on the special circumstance allegation.

█ The People argue defendant invited the error and is therefore estopped from complaining of it on appeal. We disagree. In the area of criminal law, the doctrine of invited error is usually called upon in cases involving erroneous jury instruction. (See, e.g., *People* v. *Wickersham* (1982) 32 Cal.3d 307, 332 [185 Cal.Rptr. 436, 650 P.2d 311]; *People* v. *Barraza* (1979) 23 Cal.3d 675, 683-684 [153 Cal.Rptr. 459, 591 P.2d 947]; *People* v. *Graham* (1969) 71 Cal.2d 303, 317-322 [78 Cal.Rptr. 217, 455 P.2d 153].) For the doctrine to apply, it must appear on the record that counsel acted for a tactical reason, rather than out of ignorance or mistake. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 330.) Here, one of defendant's two public defenders correctly pointed out that, because defendant had been convicted of two counts of first degree murder, a jury trial on the special circumstance allegation would be a pro forma exercise. However, *Memro*

---

[3] Section 190.4, subdivision (a) provides in relevant part: "Whenever special circumstances as enumerated in Section 190.2 are alleged and the trier of fact finds the defendant guilty of first degree murder, the trier of fact shall also make a special finding on the truth of each alleged special circumstance. The determination of the truth of any or all of the special circumstances shall be made by the trier of fact on the evidence presented at the trial . . . .

" . . . . . . . . . . . . . . . . . . . . . . . . .

"If the defendant was convicted by the court sitting without a jury, the trier of fact shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. . . ."

makes clear that a defendant must be given the opportunity to have a jury trial on the special circumstance allegation even if it would be a pro forma exercise. (*People* v. *Memro, supra,* 38 Cal.3d at p. 704.) Thus, the public defender's explanation demonstrates ignorance rather than tactics. Moreover, defendant's other public defender indicated he had not even read *Memro*. As the record shows no tactical reason for defense counsel's actions, defendant is not estopped from raising the denial of his right to a jury trial on this appeal.

We turn then to the question of the standard of prejudice, expressly left open in *Memro*. (38 Cal.3d at pp. 704-705.) ▆▆ Defendant contends the denial of the right to a trial by jury in this case is prejudicial per se, citing *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444]. *Duncan* is inapposite as it involved the federal constitutional right to trial by jury at the guilt phase of the trial. ▆ ▆▆ ▆▆ ▆ ▆ Recently, the United States Supreme Court declared there is no federal constitutional right to a jury trial at the sentencing phase of a capital trial.[4] (*Spaziano* v. *Florida* (1984) 468 U.S. 447, 457-465 [82 L.Ed.2d 340, 350-355, 104 S.Ct. 3154].) Thus, the error was not prejudicial per se under *Duncan*.

▆ The right to a jury trial on special circumstance allegations is of statutory, rather than constitutional, derivation. (See *People* v. *Memro, supra,* 38 Cal.3d 658.) Nevertheless, the deprivation of a statutory entitlement to a jury trial implicates the federal due process clause. (*Hicks* v. *Oklahoma* (1980) 447 U.S. 343 [65 L.Ed.2d 175, 100 S.Ct. 2227]; *People* v. *Odle, supra,* 45 Cal.3d 386, 412.) In *Hicks,* a jury sentenced the defendant to a 40-year term mandated by a recidivist statute. An Oklahoma statute entitled the defendant to be sentenced by jury. On appeal, the intermediate appellate court noted the recidivist statute had just been declared unconstitutional in another case, but refused to remand for a new jury sentencing hearing; the court explained the defendant was not prejudiced as the 40-year sentence was within the range of permissible punishment. The Supreme Court reversed, holding the defendant was clearly prejudiced because a jury might have sentenced the defendant to less than 40 years in prison.

The *Hicks* court explained the nature of the error as follows: "It is argued that all that is involved in this case is the denial of a procedural right of exclusively state concern. Where, however, a State has provided for the

---

[4] "Under our state's procedure, the special circumstance findings are made at the close of the 'guilt phase' trial, following a first degree murder verdict, rather than during the 'penalty phase.' (§ 190.1.) This difference has no constitutional significance. For purposes [of the analysis whether there is a constitutional right to have a jury determine special circumstance allegations] the special circumstance finding is a sentencing issue." (*People* v. *Odle* (1988) 45 Cal.3d 386, 411, fn. 11 [247 Cal.Rptr. 137, 754 P.2d 184].)

imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, [citation] and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State. [Citations.]" (447 U.S. at p. 346 [65 L.Ed.2d at p. 180].) Because the defendant was prejudiced by the denial of his constitutional right to due process, the Supreme Court vacated the lower court judgment and remanded.

In *Hicks,* the prejudice was clear and the court did not address the standard of prejudice for denial of procedural due process. However, the United States Supreme Court has recently provided guidance on the standard of prejudice for denials of constitutional rights, in *Rose v. Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]. There, the court explained that the harmless error analysis of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] applies to most claims of constitutional error: "Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis. The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.' [Citation.]" (*Id.* at p. 579, 92 L.Ed.2d at p. 471.)

Here, defendant had counsel and was sentenced by an impartial adjudicator. Moreover, the record establishes the correct sentence was imposed not only beyond a reasonable doubt but beyond a shadow of a doubt. The district attorney charged defendant with the special circumstance allegation set out in section 190.2, subdivision (a)(3), which provides for a penalty of either death or life imprisonment without the possibility of parole for a person found guilty of murder in the first degree if "[t]he defendant has in this proceeding been convicted of more than one offense of murder in the first or second degree." The public defender argued defendant was guilty of second degree murder for the killings of Shawnae and Crystal. As the district attorney agreed not to seek the death penalty, the question whether defendant would be sentenced to life without the possibility of parole turned solely on the trial court's findings in the guilt phase. That is, because the trial court found both killings were first degree murder, the special circumstance applied by its own terms. Any error of the trial court

in failing to obtain a waiver of defendant's statutory right to have a jury determine his sentence enhancement was harmless.

■ Defendant contends the trial court lacked jurisdiction to sentence him, citing without discussion *People* v. *Serrato* (1973) 9 Cal.3d 753 [109 Cal.Rptr. 65, 512 P.2d 289], *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], and *People* v. *Harvey* (1980) 112 Cal.App.3d 132, 139 [169 Cal.Rptr. 153]. Although the cases are inapposite, at least *Serrato* makes the point that a sentence which exceeds statutory limits is in excess of the trial court's jurisdiction, thus necessitating a remand for resentencing. (9 Cal.3d at pp. 764-765.) However, the trial court here imposed a sentence within the statutory limits of section 190.2, subdivision (a). In fact, because of the court's earlier, and unchallenged, findings at the guilt phase, the court imposed the only sentence available under the statute. The trial court's sole error was its failure to ask defendant if he wished to have a jury impose that sentence, rather than the trial court. This error was one of procedure and of procedural due process, but not one in excess of jurisdiction. And the error was harmless.

### III

■ In response to defendant's motion to quash, the trial court excluded the statements defendant made to Deputy Baker while seated in the patrol car but admitted his subsequent confession. Defendant contends the trial court erroneously admitted his confession because it was tainted by the earlier statements he made to Deputy Baker, which were obtained in violation of *Miranda* v. *Arizona, supra,* 384 U.S. 436. We disagree.

We assume for purposes of argument a presumption exists under decisions of the California Supreme Court, that a confession obtained in violation of *Miranda* taints any subsequent confession, even if the subsequent confession is noncoercive and follows a proper *Miranda* advisement. (See *People* v. *Spencer* (1967) 66 Cal.2d 158, 167 [57 Cal.Rptr. 163, 424 P.2d 715]; *People* v. *Johnson* (1969) 70 Cal.2d 541, 547 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366], disapproved on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 899, fn. 8 [135 Cal.Rptr. 786, 558 P.2d 872]; see also *In re Pablo C.* (1982) 129 Cal.App.3d 984, 989 [181 Cal.Rptr. 468]; *People* v. *Celaya* (1987) 191 Cal.App.3d 665, 673 [236 Cal.Rptr. 489]; *People* v. *Underwood* (1986) 181 Cal.App.3d 1223, 1233 [226 Cal.Rptr. 840].) Upon arresting defendant, Deputy Baker failed to advise him of his *Miranda* rights. In response to Baker's questions, defendant stated the girls were dead and then directed Baker to their bodies. We assume the previously cited decisions of our Supreme Court hold that defendant's sub-

sequent confession was presumptively tainted by the "non-Mirandized" confession.[5]

On the other hand, defendant's confession would not be subject to exclusion under *Oregon* v. *Elstad* (1985) 470 U.S. 298 [84 L.Ed.2d 222, 105 S.Ct. 1285]. There, the United States Supreme Court held a noncoercive confession obtained following the provision of a *Miranda* warning will not be excluded even though it follows a noncoercive admission obtained without the benefit of a *Miranda* warning. (*Id.* at pp. 308-309, 84 L.Ed.2d at pp. 231-232.) In *Elstad*, the police interviewed a burglary suspect who made incriminatory statements before receiving a *Miranda* advisement; the suspect subsequently confessed after knowingly and voluntarily waiving his rights. (*Id.* at pp. 300-303, 84 L.Ed.2d at pp. 226-228.) Here, there is no evidence defendant's *Miranda* waiver and confession were anything but knowing and voluntary. (See *infra,* § IV.*) Hence, his confession would not be excluded under the federal *Miranda* exclusionary rule.

The People contend and we agree that the line of California cases, which hold that a noncoerced, "non-Mirandized" confession presumptively taints a subsequent noncoerced, "Mirandized" confession, is no longer viable under the California Supreme Court's recent decision in *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307]. In *May*, the court considered whether the *"Disbrow* rule"—which precluded the use of a statement obtained in violation of *Miranda* for impeachment—survived the California voters' adoption of the "Truth-in-Evidence" provision of Proposition 8, which is set out in California Constitution, article I, section 28, subdivision (d).[6] The court explained that in *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], it had held the effect of Proposition 8 was to preclude California courts from providing remedies for violations of the state or federal search and seizure provisions greater than the remedies provided under the Fourth Amendment. (44 Cal.3d at p. 316,; The court opined that a violation of *Miranda* implicates the constitutional right to counsel and privilege against self-incrimination, and that Proposition 8 had

---

[5] Because of our resolution of this case on another ground urged by the People, we need not reach the People's alternative contentions that (1) defendant's statements to Baker were admissions, not confessions, thus distinguishing *Pablo C.* (see *People* v. *Underwood, supra,* 181 Cal.App.3d at p. 1233), and (2) the statements to Baker were admissible under the "rescue doctrine" and therefore did not taint the subsequent confession.

* See footnote, *ante,* page 1376.

[6] Subdivision (d) of section 28 of article I of the California Constitution provides in relevant part: "Except as provided by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded in any criminal proceeding,* including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. *Nothing in this section shall affect any existing statutory rule of evidence relating to privilege . . . .*" (Italics added.)

the same effect on judicially created remedies to enforce those rights: "While *In re Lance W., supra,* 37 Cal.3d 873, involved exclusionary remedies for violation of constitutional search and seizure provisions rather than the constitutional rights to counsel and rights against self-incrimination involved here, its reasoning and result are equally applicable. Both kinds of exclusionary rules are addressed to evidence obtained by police conduct in violation of constitutional provisions. Both are based on the same rationale of deterring unlawful police conduct." (44 Cal.3d at p. 316, brackets deleted.) Thus, the court concluded that because *Disbrow* did not extend the substantive protection provided by the state constitutional privilege against self-incrimination (Cal. Const., art. I, § 15), but rather merely created a new remedy for violations of *Miranda,* the *Disbrow* rule was abrogated by the adoption of Proposition 8. (44 Cal.3d at p. 317.)

The defendant in *May* argued the *Disbrow* rule was incorporated within Evidence Code section 940,[7] which is a statutory privilege saved by the "savings clause" of the Truth-in-Evidence provision of Proposition 8. The court rejected the argument: "Section 940, on its face, is a statutory recognition of the constitutional privileges against self-incrimination. Even assuming arguendo section 940 is an 'existing statutory rule of evidence relating to privilege' it is not helpful here. The question is not whether the defendant had a constitutional right under *Miranda* to refuse to disclose any information during the police interrogation. He clearly had such rights under both the state and federal Constitutions. The question is rather, given that defendant's constitutional privileges against self-incrimination and right to counsel were violated by the interrogation, what remedy is available to him?" (44 Cal.3d at p. 316, brackets deleted.) The court concluded ". . . section 940, which relates only to substantive, not remedial, rights cannot be relied upon to save the exclusionary rule set forth in *Disbrow*." (*Id.,* at p. 317.)

The Supreme Court's analysis in *May* controls the result here. *Pablo C.* and the other cited cases did not extend the substantive privilege against self-incrimination set out in the state Constitution; rather, those cases created an exclusionary rule for violations of the privilege. As California courts may not extend the *Miranda* exclusionary rule beyond that stated by the United States Supreme Court (see *People* v. *Warner* (1988) 203 Cal.App.3d 1122, 1126-1129 [250 Cal.Rptr. 462]), it follows that we are bound by the decision in *Elstad,* rather than the more liberal exclusionary rule stated in *Pablo C.* Thus, we hold the trial court did not err in denying defendant's motion to quash his confession.

---

[7] Evidence Code section 940 provides: "To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."

## IV*

. . . . . . . . . . . . . . . . . . . . . . . .

## V

The judgment is affirmed.

Sims, Acting P. J., and Marler, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 2, 1989.

---

*See footnote, *ante,* page 1376.