[No. A043130. First Dist., Div. One. Jan. 19, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGLAN O'SULLIVAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

**COUNSEL**

Cliff Gardner and Fiedler, Gardner & Derham for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—Roglan O'Sullivan appeals from her conviction for possession of methamphetamine in a county jail, a violation of Penal Code section

4573.6. The court imposed the 16-month lower term and credited appellant with 182 days for time served.

Appellant contends that the trial court violated her Fifth Amendment privilege against self-incrimination by (1) admitting a statement she made while in custody during a strip search and (2) admitting evidence and allowing comment upon the fact that, aside from her one statement at the time the methamphetamine was discovered, appellant never claimed, prior to testifying at trial, that the container in which the amphetamine was found was not hers. . . .*

We hold that the court did not err in admitting appellant's spontaneous utterance when an officer searching her property stated, "I think I have something here," because there was no interrogation or its equivalent. We further hold that after Proposition 8, evidence of appellant's pre-*Miranda* silence may be excluded only if application of the exclusionary rule is compelled by federal law. Since the admission of evidence of pre-*Miranda* silence to rebut a defense claimed for the first time at trial is permitted by federal law (see *Fletcher* v. *Weir* (1982) 455 U.S. 603, 605-606 [71 L.Ed.2d 490, 493-494, 102 S.Ct. 1309]), appellant's pre-*Miranda* silence was admissible on cross-examination and rebuttal. . . .*

## FACTS

Deputy Sheriffs Felix and Elliott were assigned to the receiving area of the women's division of the county jail in San Bruno on January 6, 1988. Appellant, who had been transferred from the county jail on Bryant Street to the San Bruno facility, arrived handcuffed, holding her property in a plastic bag. While processing her into the jail, Deputy Elliott asked appellant if the property in the bag was hers. She replied that it was. Deputy Elliott then searched appellant's property while Deputy Felix searched her person. In the bottom of a deodorant container Deputy Elliott found two small clear plastic bags containing a white powder substance. She turned to Deputy Felix and said, "I believe I have something here." Appellant turned around, looked toward Deputy Elliott and the table where the powder was exposed and said, "oh, oh."

The powder found with appellant's property contained methamphetamine.

Appellant testified that before she entered the Bryant Street jail in early December she was strip-searched and not allowed to bring any personal possessions into the county jail except money. Prior to her transfer to the

---

*See footnote, *ante,* page 237.

San Bruno facility on January 6, she had been given a Mennen Speedstick deodorant by a cellmate. Two other inmates in her cell possessed Mennen deodorant sticks and numerous people had access to her property before it was searched by Deputy Elliott. When she was told on January 6, 1988, that she would be leaving that day, she "just kind of geared [her] things together and put them in a bag." She did not recall putting the deodorant in the bag and did not think the one which was confiscated was hers; hers was more used. Appellant denied making any statement to the deputies while she was being searched.

Later, two other inmates who were being processed into San Bruno with appellant told her that the deputies had found something—they didn't know what—in her deodorant. Appellant then looked for her deodorant stick and noted it was missing. She first learned of these charges when she was brought back to San Francisco the next day and rebooked.

## I.

### *Admission of Appellant's Statement During the Strip Search*

■ Appellant first contends that the trial court should not have admitted her statement, i.e., "oh, oh," when she saw that Deputy Elliott had discovered the methamphetamine, because no *Miranda* warning had been given. The trial court determined that appellant was not subjected to interrogation or its equivalent. We hold that appellant's statement was the type of spontaneous utterance that is admissible even in the absence of *Miranda* warnings. (See *Rhode Island* v. *Innis* (1980) 446 U.S. 291 [64 L.Ed.2d 297, 100 S.Ct. 1682].)

There is no dispute in this case that appellant was in custody at the time that the statement was made. The only issue is whether Deputy Elliott's statement, "I think I have something here," constituted interrogation or its functional equivalent for purposes of invoking the procedural protections mandated by *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. In *Rhode Island* v. *Innis, supra*, 446 U.S. 291, the court held that *Miranda* warnings must be given whenever a person in custody is subjected to "express questioning or its functional equivalent. ■ That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were de-

signed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is *reasonably likely to evoke an incriminating response from a suspect* thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (*Id*. at pp. 300-302 [64 L.Ed.2d at p. 308], fns. omitted, italics in original.)

■ Applying this standard to the conversation that took place during the strip search, the trial court concluded that Deputy Elliott's comment, "I think I have something here," was not the functional equivalent of interrogation. The court found that "Deputy Elliott, . . . [was] simply notifying her companion officer or supervisor of the discovery of some contraband which presumably is what she's supposed to do." The court also stated that Deputy Elliott's statement was not "intended to elicit some sort of response from the defendant."

Appellant argues that the focus, when determining whether, under *Innis*, a suspect has been subjected to interrogation or its functional equivalent, must be on the "subjective perceptions" of the suspect, rather than the intent of the officer. A careful reading of *Innis*, however, discloses that there are two components to the definition of "interrogation," neither of which turns on the actual subjective perceptions of the suspect or the intent of the officer. The first is whether the police conduct was the type of conduct *"reasonably likely* to elicit an incriminating response." With respect to this component, appellant is correct. The focus is "upon the perceptions of the suspect rather than the intent of the police" (*Rhode Island* v. *Innis, supra*, 446 U.S. at pp. 301-302 [64 L.Ed.2d at p. 308], italics ours.) Since this part of the definition is qualified by the term "reasonably," which typically is used to signify that the definition is objective, the mere fact that appellant might have actually perceived Officer Elliott's remark as being directed to her does not compel the conclusion that the officer's conduct was the functional equivalent of an interrogation.

The second component is whether, even if the officer did not intend to elicit an incriminating response, she *should have known* that her remark was likely to do so. The facts of this case are analogous to those in *Innis*. In that case, Innis was arrested, given his *Miranda* rights, and asked to see a lawyer. He was placed in a police car with a wire mesh screen between the front and rear seats. Three officers accompanied Innis to the station in the car. Two of the officers had a conversation about the danger to handicapped

children in a nearby school if one of them should find the missing shotgun. The defendant told the officers to turn back so he could tell them where the gun was. After further *Miranda* advice, Innis told them where the gun was in order to " 'get the gun out of the way because of the kids.' " (446 U.S. at pp. 294-295 [64 L.Ed.2d at p. 304].) The court held that there was no express questioning, the conversation was a dialogue between the officers to which no response was invited, and it could not be said that the officers should have known that their conversation was reasonably likely to elicit an incriminating response. (*Id.* at pp. 302-303 [64 L.Ed.2d at p. 309].)

Similarly in this case, the officers were making the searches as a part of a normal transfer procedure, and appellant, although in custody, had been in custody for some time and was not in any additional state of confinement related to suspicion of another offense. While the officers were carrying out these routine searches of appellant's person and property, the comment was made by one deputy to another conveying information relevant to the search they were carrying out. Appellant turned around and looked toward the table where the bags of powder were in view. She then made her comment. By analogy to the hypothetical situation posed in *Innis*, it is clear that had appellant been facing Deputy Elliott, observed her remove the plastic bags, and said, "oh, oh," before the deputy informed her own colleague, there would have been no *Miranda* issue. There is no basis for finding that the deputy should have known her quick, informative remark, made contemporaneously with her discovery, was reasonably likely to elicit an incriminating response. The comment made by Deputy Elliott could fairly be characterized as the type of comment "normally attendant to arrest and custody" that the *Innis* court specifically excluded from the definition of interrogation. (*Rhode Island* v. *Innis, supra*, 446 U.S. at pp. 301-302 [64 L.Ed.2d at p. 308].)

The cases relied on by appellant in support of her contention that Deputy Elliott's remark constituted the functional equivalent of interrogation do not present analogous facts. In *People* v. *Morris* (1987) 192 Cal.App.3d 380 [237 Cal.Rptr. 402], the booking officer went beyond the scope of a booking interview and directly interrogated the defendant, asking who he was accused of killing. The defendant then admitted to killing his sister-in-law. (*Id.* at p. 388.) By contrast, in this case Officer Elliott never directly addressed appellant and said nothing more than that required to notify the officer conducting the strip search that she had found some contraband. In *People* v. *Stewart* (1965) 236 Cal.App.2d 27 [45 Cal.Rptr. 712], the police conduct was even more directly related to techniques typically recognized as "interrogation." In that case, the police confronted the defendant with a codefendant's confession but refrained from asking any questions. The court held that the defendant's silence in the face of this confession was

inadmissible because the police conduct, even though it did not entail questioning, was very similar to traditional forms of interrogation. (*Id.* at p. 32.) There is no analogy between the type of police conduct in *Stewart* and that of Officer Elliott.

## II.

### Admission of Evidence and Comment upon Appellant's Pre-Miranda Silence

■ Appellant next contends that the court erred in admitting evidence that she never denied that the container in which the contraband was found belonged to her. The prosecutor established appellant's silence . . .* on rebuttal by the testimony of Deputy Felix and appellant. In addition to establishing that appellant never said anything to the deputies except "oh, oh," the prosecutor also questioned appellant on rebuttal regarding her silence when told by two fellow inmates that something had been found in her deodorant.[1] In closing argument, the prosecutor argued that appellant's silence following the discovery of the deodorant was a factor to consider in evaluating the credibility of her defense that the deodorant stick was not hers.

Appellant had not been given *Miranda* warnings prior to these silent "responses."

It is an established principle of federal law that once an accused has been given the *Miranda* warning, his or her silence may not be used to impeach an explanation subsequently offered at trial. (*Doyle* v. *Ohio* (1976) 426 U.S. 610, 619 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240].) However, if no *Miranda* warning has been given, evidence of the accused's silence is admissible to impeach a defense offered for the first time at trial. (*Fletcher* v. *Weir, supra,* 455 U.S. 603, 605-607 [71 L.Ed.2d 490, 493-494].)

Prior to the effective date of Proposition 8, the California courts adopted a more expansive reading of *Doyle*, based on independent state constitutional grounds. Thus, in *People* v. *Free* (1982) 131 Cal.App.3d 155 [182 Cal.Rptr. 259], the court held that under the "California rule: postarrest silence may not be commented upon . . . [even] if there is no *Miranda* warning . . . ." (*Id.* at p. 165.) Even after the effective date of Proposition 8, in *People* v. *Jacobs* (1984) 158 Cal.App.3d 740 [204 Cal.Rptr. 849], the

---

* See footnote, *ante,* page 237.

[1] Appellant testified that when two inmates told her that deputies found something in her deodorant, her response was, "[H]ow did they know it was my deodorant?"

court held that "[a] defendant's right under California Constitution, article I, section 15, not to be questioned on cross-examination about his silence during or after his arrest is unaltered by California Constitution, article I, section 28, subdivision (d)." (*Id.* at p. 750.)

For the proposition that the California rule requiring exclusion of evidence of her silence, even in the absence of *Miranda* warnings, survives Proposition 8, appellant relies upon *People* v. *Jacobs, supra*, 158 Cal.App.3d 740. The reasoning of *Jacobs* does not survive *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], which held that California Constitution article I, section 28, subdivision (d) abrogated the judicially created exclusionary rule of *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272] [holding that statements obtained in violation of *Miranda* may not be used for impeachment] in favor of the contrary rule stated in *Harris* v. *New York* (1971) 401 U.S. 222 [28 L.Ed.2d 1, 91 S.Ct. 643].

In *May,* the issue before the court was whether the "savings clause" of Proposition 8, which provides that ". . . Nothing in this section [prohibiting the exclusion of relevant evidence except by statute] shall affect any existing statutory rule of evidence relating to privilege or hearsay, . . ." preserved the exclusionary rule set forth in *Disbrow.* Relying on *In re Lance W.* (1985) 37 Cal.3d 873, 886-889 [210 Cal.Rptr. 631, 694 P.2d 744], the court held that although Proposition 8 preserved the rights recognized under Evidence Code section 940, it eliminated the *remedy* of exclusion for violation of the state Constitution unless federal law would also compel exclusion of the evidence unconstitutionally obtained. (*People* v. *May, supra*, 44 Cal.3d at p. 316.)

Since the *May* decision, the courts have consistently held that state cases applying the exclusionary rule in circumstances where federal law would not compel exclusion are no longer valid. (See, e.g., *People* v. *Hall* (1988) 199 Cal.App.3d 914 [245 Cal.Rptr. 458]; *People* v. *Moore* (1988) 201 Cal.App.3d 877, 885 [247 Cal.Rptr. 353]; *People* v. *Warner* (1988) 203 Cal.App.3d 1122 [250 Cal.Rptr. 462]; *People* v. *Gastile* (1988) 205 Cal.App.3d 1376 [253 Cal.Rptr. 283].)

The holding of the court in *Jacobs* was also based on independent state constitutional grounds. It therefore also must fall because the decision in *Jacobs,* like the decision in *Disbrow,* did not define the scope of the privilege against self-incrimination. Rather, it simply applied the remedy of exclusion of the evidence in circumstances which would not compel exclusion under federal law. We therefore find no error to the extent that evidence of appellant's silence was admitted for purposes of rebuttal.

. . . . . . . . . . . . . . . . . . . . . *

The judgment is affirmed.

Newsom, Acting P. J., and Holmdahl, J., concurred.

---

* See footnote, *ante,* page 237.