[No. F011019. Fifth Dist. Mar. 14, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
FERMIN FREDRIC MORENO et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV and V.

**COUNSEL**

James E. McCready and Cliff Gardner, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Shirley A. Nelson and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THAXTER, J.—In what is apparently a case of first impression, we will hold that the special circumstances jury trial provision of Penal Code[1] section 190.4, subdivision (a) is not mandated by the California Constitution.

## STATEMENT OF THE CASE

In information number 25143 Fermin Fredric Moreno and his brother, Fernando Moreno (collectively appellants), were charged with the murder of Henry Woods (§ 187), special circumstances (§ 190.2, subd. (a)(17)), attempted robbery (§§ 211, 664), and burglary (§ 459). Personal use of a deadly weapon (knife) enhancements (§ 12022, subd. (b)) were alleged for each count.

Jury selection began on December 4, 1987, but had not been completed on April 12, 1988. Appellants and the People then reached an agreement whereby a second murder charge (the Duenas murder) awaiting preliminary hearing was consolidated with the Woods case, appellants waived preliminary hearing on the Duenas charges and their right to a jury trial, and the People waived the death penalty.

The Duenas complaint, filed in the superior court the following day and serving by stipulation as an information, charged appellants with murder (§ 187), special circumstances (§ 190.2, subd. (a)(2), (3), and (17)), robbery (§ 211), dissuasion of a witness by force (§ 136.1, subd. (c)(1)), and, as to Fernando only, possession of a deadly weapon in jail (§ 4574). As to the murder and robbery counts, appellants were each additionally alleged to have personally used a deadly weapon (knife). (§ 12022, subd. (b).)

After a court trial of the consolidated cases, appellants were convicted in the Woods case of first degree murder with special circumstances (committed while engaged in the commission of burglary and the attempted commission of robbery), burglary, and attempted robbery. In each of the three counts, the court also found the personal knife use enhancement true as to each appellant.

In the Duenas case the court found both appellants guilty of first degree murder with a special circumstance (multiple first degree murder convictions in the proceeding). The court, however, found insufficient evidence to support a special circumstance of murder committed in the course of a

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

felony. The personal use enhancement was found true as to each appellant. Appellants were found not guilty of the remaining three charged offenses.

Prior to sentencing, appellants moved to strike the special circumstance findings pursuant to section 1385. The motion was denied, and appellants were given identical sentences: two consecutive life terms of imprisonment without possibility of parole with two consecutive one-year enhancements for personal use of a knife. Sentences for the attempted robbery and burglary were stayed pursuant to section 654.

Appellants timely appealed.

FACTS

*Duenas Murder*

In May 1987, appellants lived with their mother in an apartment building in Visalia. The rear of the apartment building faced the rear of the Cielito Lindo, a neighborhood bar or restaurant. The rear area of the Cielito Lindo property was separated from the apartments' backyard area by a chain link fence. There was a hole in the fence large enough for an adult to pass through, close to the apartment where appellants lived.

About 7:30 p.m. on May 6, Visalia Police Officer Gary James responded with his partner to the Cielito Lindo where they found the body of Ramon Duenas in the fenced area behind the building. The body was adjacent to a restroom area at the rear of the building, and there were apparent blood spatters in the sink and on the doorjamb. The toilet seat was up, and there appeared to be urine in the bowl; when Duenas's body was rolled over, it was discovered that his fly was open and his genitals exposed. Duenas was clutching a small amount of money, and nearly $100 was found in his pockets. An autopsy revealed Duenas had received two fatal knife wounds; one a downward blow from the base of the neck into the chest cavity, the other a skull penetration to the side of the left eye resulting in a brain laceration. In addition, Duenas had a minor defensive wound on his left hand.

Several officers examined the apartment backyard area on the other side of the chain link fence. Officer James noticed Fernando leaning out of appellants' bedroom window, which faced the site where Duenas's body was found. When questioned by James, Fernando denied seeing or noticing anything but seemed very interested and slightly nervous as James searched the area near the fence for physical evidence. Through the window, James saw Fermin seated on a bed during this time but did not recall him

responding to any questions. Officer David Salazar also came to appellants' window, and Fernando again denied having noticed any disturbance.

Other witnesses suggest that Fernando and Fermin were more than aware of Duenas's murder. Their brother, David Moreno, testified that he was in appellants' bedroom around the time that Fernando spoke with Officer James through the window. Both appellants told David they had stabbed Duenas in the head and throat, apparently because Duenas was going to "burn" them in a cocaine deal. David talked with appellants again the following day, and both again admitted to the stabbing, indicating that their mother had washed their bloody clothes. They told David they had been playing pool prior to going out back with Duenas for the drug deal; then, after killing him, they jumped the fence and buried the knife in the backyard area of the apartments.

Freeman Ramirez testified that he saw appellants on the evening after Duenas's murder. Fermin told him they had killed "some fucking wetback" at the Cielito Lindo. Fernando confirmed the story. Both appeared proud. They specifically stated they had stabbed him twice with a knife.

### Woods Murder

Henry Woods lived at 627 North Bridge, at the corner of Bridge and Grove, in Visalia. On the afternoon of the Duenas killing, May 6, Henry Woods visited his next-door neighbor, Patty Murphy, seeking assistance in removing appellants from his property. Woods indicated that appellants were giving him a bad time. Murphy and several visiting friends accompanied Woods back to his house and directed appellants to leave. Appellants argued for a bit, then Fermin pointed at Woods and said, in a threatening manner, "We'll be back." They then walked away.

When appellants saw Freeman Ramirez on the following evening and told him about the Duenas killing, they also attempted (persistently but ineffectively) to borrow money. Freeman had only $5. "[T]hey wanted enough to get a bottle of wine." Eventually Fernando indicated appellants had to "go take care of some business." It was a little before 6 p.m.

Later that evening, Tammy Abila, Vanessa Madrid and Kim Burkhardt were seated at a picnic table in a park area across the street from Woods's house. The table was 125 feet from Woods's front door. The women observed appellants approach Woods's house and knock on the door. Fermin was carrying a knife. Tammy heard Woods, from inside the house, ask who was at the door. Appellants replied, "It's Fermin and Fernando. Open up the door." When Woods failed to open the door, appellants began kicking

it. The door eventually was opened partially, stopped by a chain lock which Fermin tried to detach with the knife. Unable to do so, he went to windows on either side of the door and pushed the knife through.

Finally appellants kicked the door in, splintering the jamb. Kim heard the voice within crying for help as appellants entered the house. Woods had a board, possibly a piece of the doorjamb. Fermin gave his knife to Fernando and took the board from Woods. Tammy saw Fermin hit Woods in the head with the board. She heard Woods yell, "and like his voice got stuck." Shortly thereafter appellants left the house at a run, Fermin throwing a knife down beside the steps as they left. A knife was later recovered from the bushes.

Visalia Police Officer Michael Stow and Reserve Officer John Bassett were first on the scene. While Bassett spoke with witnesses, Stow approached the residence and found Woods, still alive, lying just inside the front door. There was blood on the floor and on Woods's face and waist area; Stow observed a puncture wound in Woods's abdomen. Stow called for an ambulance and asked Woods who had attacked him. Woods responded, "Jimmy knows who they are," and explained that Jimmy also lived at the house. Jimmy Ramirez, Woods's brother-in-law, testified that he had previously witnessed an argument between Woods and Fermin over some missing toothpaste, possibly the day before the murder.

Officer Steven Puder arrived several minutes after Stow and Bassett. Puder spoke with Woods who told him that two guys had broken the door in, saying they wanted his money. When Woods refused, one started stabbing him with a large knife.

Tammy Abila, who knew appellants, gave their names to Reserve Officer Bassett. Before Woods was moved out by the ambulance attendants, Bassett spoke with him. "I asked him if he knew who did it. Without pausing I asked him if he knew Fermin or Fernando Moreno." Woods responded, "Fermin and a guy did it. I am hurting real bad." Woods later died due to loss of blood from his abdominal wounds, one of which transected the renal artery causing massive blood loss.

Shortly after Woods's killing, appellants bragged to Tammy's brother, Harvey Abila, that they had killed the old man down the street. Harvey told them that the police were coming, and appellants "took off running." Harvey saw one knife during this conversation; so did Laura Dobkins, who was also present. She saw one of appellants stabbing a knife into the dirt. As they ran off, she thought she saw Fermin toss a knife over the fence.

Approximately a month later, a knife was recovered some 60 feet from the fence in an adjacent field.

Officer James and his partner apprehended appellants near Soroptomist Park. On their arrest, Fermin asked, "What stabbing are you arresting me for?" No one else had yet mentioned a stabbing. Blood samples were drawn from appellants between 11 and 11:15 p.m. Fermin's blood-alcohol level was .14 percent; Fernando's blood-alcohol level was .18 percent.

Blood spots were found on Fernando's boots. In addition, a bloodstain was found on the inside of the waistband of Fernando's boxer shorts. Appellants and their victims were typed, using both the ABO classifications and the phosphoglucomutate (PGM) enzyme system. The results suggested that, of the four, the blood on Fernando's shorts could only have come from Woods. While the others were type O, Woods was type B, as was the blood on the shorts. That blood also appeared to match Woods's PGM subgroup, and was inconsistent with the others tested.

Two pennies were found on Woods's person; no other money was found either on Woods or in his house.

DISCUSSION

I.

*Jury Trial on Special Circumstances*

Section 190.4, subdivision (a) provides in pertinent part: "If the defendant was convicted by the court sitting without a jury, the trier of fact [for special circumstance allegations] shall be a jury unless a jury is waived by the defendant and by the people, in which case the trier of fact shall be the court. . . ."

In *People* v. *Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446], the California Supreme Court held that "an accused whose special circumstance allegations are to be tried by a court must make a separate, personal waiver of the right to a jury trial." (*Id.* at p. 704.) As retrial was necessary on other grounds, however, "[t]he question as to what standard of prejudice should be applied in this situation is left for another day." (*Id.* at p. 705.)

A. *Was There a Separate Waiver?*

In the instant case, on April 12, 1988, the trial court advised appellants that each of them, independently, "have an absolute right . . . to have a

jury hear this case and impose a sentence." Each appellant then waived a jury trial in exchange for a commitment by the People not to seek the death penalty. Neither appellant, however, explicitly stated a "separate, personal waiver" of the right to a jury trial for the special circumstance allegations. Likewise, the record does not reveal any express advisement of the appellants' rights to such a separate jury trial. Appellants assert the failure to give such advice and obtain separate waivers was error.

Respondent counters that *Memro* does not *mandate* that the court take separate waivers of the right to a jury for the guilt phase and the right to a jury to hear the special circumstances.

"Although the California Supreme Court's language in *Memro* . . . seems to support appellants' position that the waivers must be separate, language immediately following the 'must make a separate, personal waiver' language clearly indicates otherwise. The court noted that a trial court '*could* satisfy . . . [the waiver requirement] by taking separate waivers as to each before commencement of trial.' Since separate waivers are only one way the requirement could be satisfied, the California Supreme Court obviously imagined other ways in which the waiver could occur."

 We cannot embrace respondent's reading of *Memro*. To us, the *Memro* language quoted by respondent signifies that the defendant can waive his right to a special circumstance jury either before or during trial. The language does not suggest that a waiver proceeding in which a defendant is not informed of, and does not separately waive, his right to a special circumstance jury under section 190.4, subdivision (a) may nonetheless meet the requirements of that statute and of *Memro* itself.

Respondent goes on to contend that appellants impliedly made a simultaneous waiver of the rights to a jury in the guilt phase and on the special circumstance allegations. Nothing in the record, however, suggests that either appellant was aware he had a separate right to a jury to hear the special circumstance allegations. While the court did advise appellants that they "have an absolute right, each one of you independently, to have a jury hear this case and impose a sentence," at most the advice related to the guilt and penalty phases of trial. The separate right to a jury trial in the penalty phase is provided for in section 190.4, subdivision (b). It is clearly distinct from the right to have a jury hear the special circumstances as provided in section 190.4, subdivision (a). The record is simply devoid of any reference to the latter right. Accordingly, we find *Memro* error.

B. *Is the Error Reversible Per Se?*

Our conclusion requires us to address the question *Memro* expressly avoided: What is the proper standard of prejudice to apply? Appellants urge

that the error is reversible per se. Respondent disagrees and argues the error was harmless.

■ Appellants concede that their reversible per se contention cannot rest on a federal constitutional footing. There is no right under the Sixth Amendment to have a jury hear and rule on special circumstance allegations. (*Walton* v. *Arizona* (1990) 497 U.S. __, __ [111 L.Ed.2d 511, 524-525, 110 S.Ct. 3047].) "[T]he deprivation of a statutory entitlement to a jury trial implicates the federal due process clause. (*Hicks* v. *Oklahoma* (1980) 447 U.S. 343 [].)" (*People* v. *Gastile* (1988) 205 Cal.App.3d 1376, 1382 [253 Cal.Rptr. 283].) ■ The appropriate standard of prejudice for violations of federal due process is the *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] "harmless beyond a reasonable doubt" standard. (*People* v. *Gastile, supra*, 205 Cal.App.3d at p. 1383; *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101].)

■ Appellants maintain that the California Constitution's jury trial clause (Cal. Const., art. I, § 16) is an independent constitutional basis for their right to a jury trial on the special circumstance allegations, and further argue that, on violation of this right, reversal is automatic.

California Constitution, article I, section 16 provides in pertinent part:

"Trial by jury is an inviolate right and shall be secured to all, . . . A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. . . ."

So far as we are aware, no published California case has considered whether the separate right to a jury trial on special circumstances provided for in section 190.4, subdivision (a), is mandated by the state Constitution. *People* v. *Gastile, supra*, 205 Cal.App.3d 1376, discussed and analyzed the right only in light of federal constitutional principles. Thus, we treat the issue as one of first impression.

(1) *General Principles.*

■ We begin by noting that our Supreme Court has recently indicated that the doctrine of independent state constitutional construction retains vitality in California. (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336 [276 Cal.Rptr. 326, 801 P.2d 1077].) While state courts will generally defer to decisions of the United States Supreme Court for interpretation of state constitutional provisions identical or similar to those in the federal Constitution, the policy is inapplicable if there is "good cause for departure or deviation therefrom." (*Id.* at p. 353.)

■ Appellants do not articulate any "good cause" for construing the state constitutional jury trial clause more expansively than the United States Supreme Court has construed the Sixth Amendment. Instead, appellants merely point us to several state court decisions not directly involving the issue under discussion and argue by analogy from those decisions.

Before turning to the cases cited by appellants, we note several indications by California courts that the right to jury trial on special circumstance allegations is not constitutionally mandated or, at least, is not subject to the reversible per se standard.

*People* v. *Granger* (1980) 105 Cal.App.3d 422 [164 Cal.Rptr. 363] was apparently the first reported case dealing with failure to obtain a separate jury trial waiver on a charged special circumstance. In *Granger* the court concluded that "defendant did have a *statutory* right to a trial by jury on the truth of the allegation of special circumstances . . . ." (*Id*. at p. 427, italics in original.) After finding that the defendant had not waived his right, the appellate court said:

"On this appeal, defendant does not question the finding that he was guilty of felony murder, in that the killing was committed in perpetration of both a robbery and a burglary. However, at the trial, he offered evidence to the effect that he was, at the time of the crime, under the influence of PCP to such an extent as to prevent him from premeditating the killing. In fact, the trial judge indicated some difficulty in finding premeditation in light of that evidence. Although there is other evidence from which a finding of premeditation could be drawn, we cannot say, beyond a reasonable doubt, that a jury could not rationally have found in defendant's favor on the issue of special circumstances. It follows that the case must be remanded for a jury trial on that issue." (105 Cal.App.3d at p. 429.)

Although the *Granger* court did not expressly address the reversible per se/harmless error issue, it actually applied the *Chapman*[2] standard in concluding that the error was not harmless beyond a reasonable doubt. In addition, by emphasizing that the defendant's right was statutory the court implied it did not derive from a constitutional source.

*Granger* was followed by, and cited approvingly in, *People* v. *Memro, supra*, 38 Cal.3d 658. The Supreme Court in *Memro* likewise found error in the failure to obtain a personal jury waiver on a special circumstance. In concluding, the court said:

---

[2] *Chapman* v. *California, supra*, 386 U.S. 18.

"However, since the judgment must be reversed on other grounds, it is unnecessary to determine whether appellant was prejudiced by that error. The question as to what standard of prejudice should be applied in this situation is left for another day." (38 Cal.3d at pp. 704-705.) By the language it chose, the Supreme Court indicated that *some* standard of prejudice applies in such cases. If the Supreme Court considers the error reversible per se, we believe the court would have said so simply and directly.

Finally, the Supreme Court has recently made pointed references to the right in question here as "statutory." (*Curl* v. *Superior Court* (1990) 51 Cal.3d 1292, 1299, 1302 [276 Cal.Rptr. 49, 801 P.2d 292].)

### (2) *Appellants' Authorities.*

In support of their argument, appellants first rely on cases in which the California Supreme Court distinguishes a special circumstance finding from the finding of an aggravating factor for sentencing purposes. (*People* v. *Odle* (1988) 45 Cal.3d 386, 412 [247 Cal.Rptr. 137, 754 P.2d 184]; *People* v. *Superior Court (Engert)* (1982) 31 Cal.3d 797, 803 [183 Cal.Rptr. 800, 647 P.2d 76]; see also *People* v. *Garcia* (1984) 36 Cal.3d 539, 552 [205 Cal.Rptr. 265, 684 P.2d 826].) In those cases, however, the court was not facing the issue posed here, i.e., whether the statutory right to a jury trial on special circumstances derives from the state Constitution. In *People* v. *Superior Court (Engert), supra,* the question was whether section 190.2, subdivision (a)(14) defined a special circumstance with sufficient specificity to satisfy due process. *People* v. *Garcia, supra,* and *People* v. *Odle, supra,* each considered the effect of error in jury instructions on special circumstances. In each case the court rejected the automatic reversal doctrine. Significantly, the *Odle* court expressly considered the state Constitution and applied the *Watson*[3] standard of prejudice. (45 Cal.3d at pp. 415-416.)

Appellants next cite *People* v. *Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013]. In *Hernandez* the court concluded that an enhancement under former section 667.8 (kidnapping for purposes of rape) could not be imposed when it was neither pled nor proven. Analyzing the issue on due process grounds, the court held that the error "cannot be deemed harmless." (46 Cal.3d at p. 211.) The case did not involve a special circumstance finding and did not rely on the state constitutional right to a jury trial. We find no support for appellants' position in *Hernandez.*

Finally, appellants rely on a series of California cases for the proposition that failure to obtain an effective waiver of the defendant's jury trial right

---

[3] *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

always results in reversal. (*People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]; *People* v. *Hopkins* (1974) 39 Cal.App.3d 107 [113 Cal.Rptr. 880]; *People* v. *Luick* (1972) 24 Cal.App.3d 555 [101 Cal.Rptr. 252]; *People* v. *Ray* (1965) 238 Cal.App.2d 734 [48 Cal.Rptr. 167]; *People* v. *De Blasio* (1963) 219 Cal.App.2d 767 [33 Cal Rptr. 473]; *People* v. *Crouch* (1963) 218 Cal.App.2d 157 [32 Cal.Rptr. 141].) After reviewing those decisions we find none of them dispositive.

None of the cited cases dealt with the right to jury trial on a special circumstance allegation. In *People* v. *Holmes, supra,* 54 Cal.2d 442, *People* v. *De Blasio, supra,* 219 Cal.App.2d 767, and *People* v. *Crouch, supra,* 218 Cal.App.2d 157, the respective defendants had not effectively waived jury trial on the question of guilt or innocence of the charged criminal offense. That right is indisputably guaranteed by the state Constitution, so the decisions in those cases shed little light on the issue before us.

In *People* v. *Hopkins, supra,* 39 Cal.App.3d 107, after the defendant waived jury trial the prosecutor amended the information to allege the intentional infliction of great bodily injury on the victim during commission of the offense. The newly added enhancement increased the possible minimum prison term on conviction from five years to fifteen years. Finding that subjecting the defendant to trial without obtaining a new jury waiver was error, the appellate court reversed without any discussion of the reversible per se/harmless error question. (*Id.* at pp. 113-120.) Because the error was clearly prejudicial under any standard, the decision does not necessarily support appellants' characterization of the case as falling in the reversible per se column.

In both *People* v. *Luick, supra,* 24 Cal.App.3d 555, and *People* v. *Ray, supra,* 238 Cal.App.2d 734, the appellate court considered the trial court's failure to obtain a separate waiver of jury trial on an allegation of prior convictions. The right to a jury trial on priors is conferred by section 969½. In each case the allegation of prior convictions was added after the defendant had waived jury trial on the offenses currently charged. Each appellate court found error. In *Ray* the judgment finding the prior convictions true was reversed for retrial. (238 Cal.App.2d at p. 735.) In *Luick* the appellate court simply ordered the reference to the prior convictions stricken from the judgment in "the interests of justice." (24 Cal.App.3d at p. 559.)

Appellants argue that because neither *Luick* nor *Ray* discusses prejudice, the appellate courts necessarily treated the error as reversible per se. Further, because the jury trial right in those cases was created by statute, as is the one involved here, we are required to reverse even without consideration of the state Constitution. We reject these contentions. *Luick* and *Ray*

simply did not address the issue. We will not read those courts' silence as an affirmative holding that the error was reversible per se. For all that appears, the question was never raised. The results may also be explained on the basis that the error was prejudicial under any standard.

None of the cases cited by appellants persuades us that their right to jury trial on the special circumstance allegations is guaranteed by the California Constitution or that deprivation of that right is reversible error per se.

(3) *Constitutional Language and History.*

Having concluded that none of the cases cited by appellants is precedent for the reversible per se standard, we look to the language and history of the state constitutional jury trial provision for indications that it is the source of the right expressed in section 190.4, subdivision (a).

The pertinent constitutional language ("Trial by jury is an inviolate right and shall be secured to all . . ." [Cal. Const. art. I, § 16]) is not significantly different from similar provisions in the original California Constitution of 1849 and the 1879 revision.[4] The wording does not expressly refer to trial of special circumstance allegations.

It is settled that the right to jury trial guaranteed by the pre-1974 state Constitution applies "only in cases where the right existed at common law." (*People* v. *Martin* (1922) 188 Cal. 281, 285 [205 P. 121, 21 A.L.R. 1399]; *People* v. *Richardson* (1934) 138 Cal.App. 404, 408-409 [32 P.2d 433].)

"It is the right to trial by jury as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. The right is the historical right enjoyed at the time it was guaranteed by the Constitution . . . ." (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 287 [231 P.2d 832].)

So far as we know, the determination of special circumstances as a separate requirement for imposing capital punishment was unknown at common law. Appellants have not directed us to any historical authority suggesting otherwise. Thus, we see no basis for concluding that the pre-1974

---

[4] Article I, section 3 of the California Constitution of 1849 provided that "[t]he right of trial by jury shall be secured to all, and remain inviolate for ever; . . ." The phrase "for ever" was deleted from this clause in article I, section 7, of the 1879 Constitution. The remaining language was unchanged until 1974.

jury trial clause of the California Constitution guaranteed a jury trial on special circumstances.

The jury trial provision was included in a measure proposed by the California Constitution Revision Commission and adopted in 1974. As we have noted, the wording of the jury trial clause of the revised Constitution (art. I, § 16) is not significantly different from its predecessors. One year before the constitutional revision, however, the concept of an allegation, trial, and finding of special circumstances was introduced by statute. (Stats. 1973, ch. 719, §§ 2, 4, 5, pp. 1297-1300.) That statute was enacted in response to the United States Supreme Court's decision in *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726], holding that imposition of the death penalty under a Georgia statute was invalid as cruel and unusual punishment under the Eighth and Fourteenth Amendments to the federal Constitution. (See *People* v. *Frierson* (1979) 25 Cal.3d 142, 173-174 [158 Cal.Rptr. 281, 599 P.2d 587].)

Arguably, the drafters of the revised Constitution, and the voters adopting it, intended to extend the jury trial guaranty to the special circumstances scheme enacted by the Legislature in 1973. A similar argument was successfully advanced in *Mitchell* v. *Superior Court* (1989) 49 Cal.3d 1230 [265 Cal.Rptr. 144, 783 P.2d 731]. In *Mitchell* the Supreme Court found that the drafters of the 1879 California Constitution intended to afford the right to jury trial in all misdemeanor proceedings, including contempts carrying a punishment indistinguishable from that imposed on a misdemeanant. (49 Cal.3d at p. 1244.) In doing so, the court relied on reported debates at the 1879 Constitutional Convention (*id*. at pp. 1242-1243) *and* on a misdemeanor contempt statute (§ 166) which existed when the new Constitution was adopted. (49 Cal.3d at p. 1244.)

The reasons underlying the *Mitchell* decision, however, do not apply in this case. The California Constitution Revision Commission completed its recommendations for revisions in 1971, long before the special circumstances statute was enacted. (Sumner, *Constitution Revision by Commission in California* (1972) 1 Western St.U. L.Rev. 48, 52.) Nothing in the commission's proceedings indicates any intention to enlarge or expand the scope of the jury trial clause (Minutes of the Meeting of the Const. Revision Com., July 23-24, 1970). When the proposed revisions were presented to the voters as Proposition 7 on the November 1974 General Election ballot, the Legislative Analyst's analysis and the ballot arguments supporting and opposing the proposition made no reference to the jury trial clause. (Ballot Pamp., Prop. 7, Gen. Elec. (Nov. 5, 1974).) For these reasons we do not infer any intent to broaden that clause's scope by encompassing the newly adopted statutory procedure for capital cases.

We discern no "good cause" for interpreting the California Constitution's jury trial clause more broadly than the United States Supreme Court has interpreted the Sixth Amendment for the determination of special circumstances in capital cases. Accordingly, we reject appellants' independent state grounds argument. The deprivation of appellants' statutory right to jury trial implicates the federal due process clause and is subject to the *Chapman* standard of harmless error. (*People* v. *Gastile, supra*, 205 Cal.App.3d at pp. 1382-1383.) We now must examine the case to determine if the error was harmless beyond a reasonable doubt.

## C. *Was the Error Harmless?*

The court found that appellants committed the Woods murder while engaged in the commission of burglary and attempted robbery. (§ 190.2, subd. (a)(17)(i) and (vii).) In the Duenas murder case the court found each appellant had been convicted of more than one offense of first degree murder in this proceeding. (§ 190.2, subd. (a)(3).)

While we will later conclude there was sufficient evidence to support the court's finding that the Woods murder occurred as appellants were engaged in committing burglary and attempted robbery, the evidence did not necessarily compel that finding. Different reasonable inferences could be drawn as to whether the burglary and attempted robbery were committed separately from or only as an incident to appellants' primary objective—murder. Each of appellants' trial counsel strenuously argued this theory to the court, relying on *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468]. Although the court rejected the arguments, we cannot say that a rational jury would have necessarily done so. Deprivation of a jury trial on those special circumstance allegations was not harmless beyond a reasonable doubt. Thus, that portion of the judgment finding the special circumstances true as to the Woods murder must be reversed.

The special circumstance found true as to the Duenas murder rested on the simple, incontrovertible fact that each appellant was, indeed, convicted of more than one offense of first degree murder in this proceeding. If a jury had been selected and sworn to "try" this special circumstance, the jury's role would have been limited to "finding" a fact which is undeniably true. When the trial court found defendants guilty of first degree murder in both killings, the special circumstance applied by its own terms. (*People* v. *Gastile, supra*, 205 Cal.App.3d 1376, 1383.) The failure to obtain a separate jury waiver on the multiple murder special circumstance was harmless beyond a reasonable doubt.

## II.-V.\*

. . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

Those portions of the judgments in case number 25143 which found true the special circumstance allegations with respect to the murder of Henry Woods and which imposed sentences on count I, the first degree murder of Henry Woods, are reversed and remanded. In all other respects, the judgments in case number 25143, including the convictions of each of the defendants of the first degree murder of Henry Woods (count I), are affirmed.

The judgments in case number 26005 are affirmed.

Martin, Acting P. J., and Dibiaso, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 30, 1991. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.

---

\* See footnote, *ante*, page 564.