[No. B038455. Second Dist., Div. Two. Dec. 5, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY ANTHONY SIMPSON, Defendant and Appellant.

COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—Appellant Bobby Anthony Simpson appeals after a court trial from which he was convicted of one count of murder with special circumstances, two counts of robbery, and two counts of burglary. Additionally, the trial court found that in the commission of those crimes, appellant personally used a knife.

### ISSUES

The contentions on appeal are that (1) the trial court erred in failing to suppress appellant's confession, and (2) the special circumstance findings should be set aside due to the lack of a proper waiver of the right to a jury trial.

### PROCEDURAL HISTORY

The information charged appellant with the following offenses:

Count I—the murder of Emily Humphrey, in violation of Penal Code section 187, subdivision (a), and that the murder was committed during the course of a burglary and a robbery (Pen. Code, § 190.2, subd. (a)(17)).

Count II—the robbery of Ms. Humphrey (Pen. Code, § 211).

Count III—first degree burglary of Ms. Humphrey's residence (Pen. Code, § 459).

Count IV—residential robbery of Jacqueline Sawyer (Pen. Code, § 213.5).

Count V—first degree burglary of Ms. Sawyer's residence (Pen. Code, § 459).

As mentioned, appellant was also charged in all counts with personal use of a knife (Pen. Code, § 12022, subd. (b)).

Appellant's motion to suppress his confession was heard toward the end of the jury selection process. After the motion was denied, appellant waived his right to a jury trial. He agreed that the matter would be submitted to the trial judge on the preliminary hearing transcript, with the understanding that both sides reserved the right to offer additional evidence. In consideration of the jury waiver by appellant, the prosecution announced it would not seek the death penalty.

The trial court found appellant guilty of all counts, and further found the special circumstance and weapon use allegations to be true. Appellant was sentenced on count I to life without possibility of parole plus one year for the knife use, and a consecutive four years plus one year on count IV. Sentences on counts II, III and V were imposed and stayed pursuant to Penal Code section 654.

## FACTS

Between noon and 1 p.m. on September 6, 1985, appellant robbed the elderly Ms. Sawyer in her apartment. Using the threat of a knife, he fled after taking approximately $125 from her.

Two hours later, he returned to the same apartment complex and forced his way into Ms. Humphrey's residence. A struggle ensued, and she was killed as a result of 24 stab wounds, 12 of which were to the chest. Appellant took $60 and her purse.

There were no witnesses to the Humphrey murder. However, a bloody fingerprint belonging to appellant was found on an envelope in Ms. Humphrey's apartment. Appellant was taken into custody pursuant to an arrest warrant. He waived his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) and agreed to talk to detectives Yancey and Gallon. During the interrogation, appellant orally admitted the crimes. His confession was reduced to writing, which he reviewed and signed.

## DISCUSSION

(1)   *The Motion to Suppress the Confession*

Appellant argues that his confession was involuntary in that he was subjected to a lengthy three- to four-hour session in which he was tricked

into a feeling that the murder of Ms. Humphrey was justified. We find the argument to be without merit.

■ The burden is on the prosecution to prove by a preponderance of the evidence that the confession was voluntary. (*People* v. *Markham* (1989) 49 Cal.3d 63, 67-71 [260 Cal.Rptr. 273, 775 P.2d 1042]; *People* v. *Kelly* (1990) 51 Cal.3d 931, 947 [275 Cal.Rptr. 160, 800 P.2d 516].)

■ In reviewing a defendant's challenge to the voluntariness of his confession, our role is to first determine whether the trial court's resolution of facts is supported by substantial evidence. If so, we must then independently determine whether the trial court's finding of voluntariness is well founded. (*People* v. *Anderson* (1990) 52 Cal.3d 453, 470 [276 Cal.Rptr. 356, 801 P.2d 1107]; *People* v. *Kelly, supra,* 51 Cal.3d 931, 947.)

■ Applying the above principles to the case before us, we note that a foundational hearing under Evidence Code section 402 resulted in a conflict in testimony between Detective Yancey and appellant.

Yancey testified that appellant initially denied complicity in any of the crimes. A written statement was prepared to that effect, but appellant refused to sign it.

After unsuccessfully trying various psychological ploys (i.e. appealing to his sense of religion, to his sense of guilt, and to his responsibility to be true to his mother's values), Yancey took a different tack. He said that in his judgment, appellant was not the type of person who would hurt someone for no reason. The detective further suggested that Ms. Humphrey (who was White) may not have liked Black people (appellant is Black), and that perhaps she attacked him first. Appellant warmed to Yancey's suggestions and confessed.

Appellant testified that after he refused to sign the first statement, he asked to terminate the interview and be taken back to his cell. His request was unheeded. Appellant claims that Gallon told him that if he did not confess, he would get the death penalty; but if he did confess, he would receive a sentence of 15 years. Appellant claims he finally did confess, but only because the detectives disparaged the victim and promised him 15 years, and not because the facts in the signed confession were true.

On rebuttal, Yancey denied that appellant requested to terminate the interrogation or that any promises were made for a reduced sentence.

The trial court resolved the conflicts in testimony in favor of the prosecution, with the comment that it found appellant's testimony to be "incredulous and not believable." We are obliged to accept the trial court's resolution of disputed facts and its evaluations of credibility if supported by

substantial evidence. (*People* v. *Spears* (1991) 228 Cal.App.3d 1, 21 [278 Cal.Rptr. 506]; *People* v. *Anderson, supra*, 52 Cal.3d 453, 470.)

Appellant contends that the confession was the product of psychological coercion due to the manner of questioning. We disagree.

First, the interrogation was not extraordinarily lengthy. It took place commencing at 8:15 a.m., a time when appellant should have been freshly rested, as he had been arrested only an hour earlier.

Second, there was no undue pressure placed on appellant. The attempt to play on appellant's religious and family values was not productive. The only approach that did work was a technique which allowed appellant to share the blame with the victim, a scenario resembling the police activities upheld in *People* v. *Kelly, supra*, 51 Cal.3d 931, 954 and *People* v. *Spears, supra*, 228 Cal.App.3d 1, 23, 27-28.

■ The true conflict seems to be whether or not appellant was offered leniency in exchange for a confession. The tenor of the testimony of both witnesses indicates that a sentencing "deal" was a high priority for appellant. The claim thus advanced is that the officers impermissibly obtained a confession by a promise of a reduced sentence. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 611-612 [147 Cal.Rptr. 172, 580 P.2d 672].)

In reviewing the trial court's decision, we note that the written statement signed by appellant eschewed any promise of leniency. The record also shows that appellant is well able to read and write, and is articulate. Finally, the trial court was in the best position to judge the credibility of Yancey and appellant.

. Accordingly, we find there was substantial evidence to support the trial court's decision to deny the motion to suppress.

(2) *The Waiver of Right to a Jury Trial*

Appellant does not contest the validity of the jury trial waiver as to guilt on the various murder, robbery, and burglary charges. ■ However, in a classic case of "buyer's remorse," he argues that the trial court erred by not taking a separate waiver of his right to trial by jury on the allegations relating to special circumstances.

In support of his position, appellant correctly states that he was entitled to a jury trial on the special circumstance issues. (*People* v. *Memro* (1985) 38

Cal.3d 658, 700 [214 Cal.Rptr. 832, 700 P.2d 446].) His assertion that such a waiver was not properly taken, though, is meritless.

A review of the reporter's transcript shows that the following pertinent exchanges took place between the assistant district attorney (Robert Werner), the defense attorneys (Kenneth Cotton and Guy O'Brien), the trial court, and appellant:

"The Court: People versus Simpson. The defendant is present with counsel, the People are represented. The jury—the jury is not present. [¶] I understand there's some type of a disposition.

"Mr. Werner: Yes, your honor. There have been a lot of discussions covering the last several days concerning this case and this morning I received permission from my superiors to basically S.O.T., submit on transcript plus additional testimony and documentation on this case at a court trial. [¶] If the defendant agrees to that procedure, we will not seek the death penalty against him. [¶] His counsel have indicated that would be the defendant's desire; is that correct?

"Mr. O'Brien: Yes.

"Mr. Cotton: That's correct.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Mr. Werner: Mr. Simpson, did you understand what I just said?

"The Defendant: Yes, sir.

"Mr. Werner: You've been discussing this matter with both of your lawyers, have you not?

"The Defendant: Yes, sir. I have.

"Mr. Werner: What's going to happen, Mr. Simpson, if you waive your right to have a jury trial on this case, the matter will be submitted on the transcript of the preliminary hearing. [¶] You remember when the preliminary hearing was held a couple of years ago, do you not?

"The Defendant: Yes, I do.

"Mr. Werner: Other information would also be submitted to the court by way of stipulation, some of it—also may be by way of live witnesses coming

in and testifying. [¶] But the upshot of the matter is that you would be a virtual certainty that you would be found guilty of counts one through five of the charges against you in the information *and all the special allegations, including special circumstances allegations will be found true.* [¶] Do you understand, sir? [Italics added.]

"The Defendant: Yes, I do.

"Mr. Werner: And the consequences of that taking place, Mr. Simpson, is that you will be sentenced to serve the rest of your life in the state prison without the possibility of parole. [¶] In other words, you will spend the rest of your life in prison. [¶] You understand that, sir?

"The Defendant: Yes."

". . . . . . . . . . . . . . . . . . . . . . . . .

"Mr. Werner: And you have certain constitutional rights that you are going to be giving up by allowing the court to hear this case in the manner that I told you about. [¶] One of those rights is a right to have a jury trial. [¶] Now, you know what a jury trial is, do you not?

"The Defendant: Yes, I do.

"Mr. Werner: Do you have any questions about your right to have a jury trial?

"The Defendant: No. I don't.

"Mr. Werner: Do you give up, at this time, your right to have a jury trial so we can submit the matter to the court in the manner that I have prescribed?

"The Defendant: Yes, I do.

"Mr. Werner: [Does] counsel join in the jury *waivers*? [Italics added.]

"Mr. Cotton: Yes, I do.

"Mr. O'Brien: Yes."

". . . . . . . . . . . . . . . . . . . . . . . . .

"Mr. Werner: Now, do you understand, sir, you will be found guilty of murder as alleged in Count One of the Information. It will further be found

true that at that time murder was committed during the course of a robbery as well as in the course of a burglary within the meaning of section [190.2 (A) subdivision 17] of the Penal Code and it will further be found that you personally used a knife during the commission of that offense. [¶] Do you understand, sir?

"The defendant:  Yes, sir.

"`  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"The Court:   The court finds the defendant understands his right to a jury trial, that he understands his right to confront and cross-examine all the witnesses. [¶] He understands his right against self-incrimination. He understands his right to put on a defense in this matter. [¶] He understands that the procedure outlined by the district attorney which is a submission on the transcript with additional witnesses, which is commonly called a Mosley submission or is sometime called a slow plea, will result in conviction of the defendant of all the offenses charged that the People have indicated. [¶] That based upon the defendant's agreement to do that the People would not seek the death penalty. [¶] Therefore based upon the findings that the court is going to make the defendant will be sentenced to life without parole. [¶] You do understand all that, Mr. Simpson; is that correct?

"The Defendant:  Yes, sir.

"The Court:   Based upon that you've been advised by your counsel and you've consulted with him before agreeing to this procedure; is that correct?

"The defendant:  Yes, sir."

It is abundantly apparent that appellant was made aware of his right to a jury trial as to *all* charges against him, (including the special circumstance and weapon use allegations), and that by submitting the entire matter to the trial court, he would be found guilty of all charges and the special circumstance and weapon use allegations. It was also made crystal clear to appellant that he would be sentenced to life without possibility of parole.

Appellant acknowledged that he had discussed the matter with both of his lawyers. Thereafter, appellant and both defense attorneys agreed to the entire procedure.

We conclude that the trial court correctly found that appellant made an intelligent, voluntary and complete waiver to all of his constitutional guarantees, including his right to a jury trial on the special circumstance allegations. Even were we to reach an opposite conclusion, any error would be

harmless beyond a reasonable doubt in view of the overwhelming evidence of the fact that appellant committed the murder in the course of a burglary and/or robbery. (*People* v. *Moreno* (1991) 228 Cal.App.3d 564, 573-579 [279 Cal.Rptr. 140].)

## DISPOSITION

The judgment is affirmed.

Fukuto, Acting P. J., and Hart, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied February 20, 1992.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.