Filed 9/13/13  P. v. Boykin CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA CODY BOYKIN,<br><br>    Defendant and Appellant. | F064577<br><br>(Tuolumne Super. Ct.<br>No. CRF36920)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Jessie Morris, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*] Before Gomes, Acting P.J., Kane, J. and Poochigian, J.

## FACTS

Defendant Joshua Cody Boykin was charged with the following crimes in a second amended information: count I – possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)[1]); count II – possession of ammunition by a felon (Pen. Code,[2] § 12316, subd. (b)(1) ); and count III – misdemeanor driving with a suspended license (Veh. Code, § 14601.2, subd. (a).) Four identical prior convictions were alleged as to each of counts I and II: a July 25, 2007, conviction for violating section 245, subdivision (a)(1); and three June 15, 2010, convictions for violating sections 12021, subdivision (a)(1), 243, subdivision (d), and 245, subdivision (a)(1). The same four convictions were alleged as section 667.5, subdivision (b) enhancements. The June 15, 2010, conviction for violating section 243, subdivision (d) was also alleged as a prior strike.

Defendant pled guilty to count III. Defendant ostensibly admitted all four prior convictions. A jury convicted defendant on counts I and II. The court sentenced defendant to a total of five years in prison.[3]

## TRIAL EVIDENCE

### Prosecution's Case

On October 22, 2011, Lynne Bird was on duty as a law enforcement officer for the U.S. Forest Service. She observed two individuals driving motorcycles without helmets. One of the motorcycles did not have appropriate turn signals and lighting. Bird "guess[ed]" the motorcycles were "maybe" 25 feet away when she first saw them.

---

[1] This section was repealed by Stats. 2010, ch. 711, § 4, operative January 1, 2012, and reenacted as section 29800, subdivision (a)(1).

[2] All further statutory references are to the Penal Code unless otherwise noted.

[3] On counts I and II, the court sentenced defendant to two years, concurrent, doubled for the strike conviction. The court imposed a concurrent term of six months on count III, and an additional one year for the prior prison term.

2.

Bird activated her overhead lights and motioned for the motorcyclists to pull over. From the time she first observed them to the time she exited her patrol vehicle, Bird never lost sight of the motorcycles.

Bird observed "a camouflage-colored shotgun in brackets on the front" of one of the motorcycles. Defendant was on the motorcycle with the shotgun. Defendant's[4] motorcycle had an expired registration.

A female, later identified as Jacqueline Ramirez, was on the other motorcycle. Ramirez had a rifle in a shoulder sling. Bird determined that Ramirez's motorcycle "was not street legal."

Defendant presented a California identification card to Bird. Bird asked if defendant had a driver's license, and he responded that it was "back at his camp." Bird checked defendant's driver's license number and discovered it had been suspended. The dispatcher also told Bird that defendant was on "C.D.C. probation."

Defendant told Bird that he was hunting for squirrels. Bird testified that "even though you're hunting, in the State of California, you cannot operate a motor vehicle with rounds chambered in the weapon." Bird told defendant she was going to look at this weapon. Defendant said, "Here's my weapon" or words to that effect.

Bird testified no rounds were chambered in the shotgun, but "there were two rounds in the tube."

Bird allowed Ramirez to return to camp to get a vehicle that could transport defendant's vehicle since he was not allowed to drive it himself. Bird then checked defendant's criminal history. She discovered defendant was a felon and placed him under arrest for possessing a firearm.

---

[4] We use possessive pronouns in connection with the two motorcycles to identify who was *riding* the motorcycle when it was pulled over, not necessarily *ownership* of the vehicle.

There was a jacket draped over the motorcycle, and defendant advised the jacket was his.[5] Bird discovered eight live shotgun shells in the pocket of the jacket.

**Defense Case**

Defendant's cousin, Shawn Smith, testified that he went camping with defendant and Ramirez. Smith testified that, at some point, defendant and Ramirez left camp. When the two left, Ramirez had the rifle on her shoulder and drove the motorcycle with the shotgun on the handlebars. Defendant rode the other vehicle.

Sergio Mendoza testified that he knew defendant through mutual friends. On October 22, 2011, Sergio was driving on a county road with his friend, David Correia, when he saw defendant and a "girl" coming down a hill. Sergio testified there was no weapon on defendant's bike, and there was a shotgun on the bike the "girl" was riding.

David Correia testified he was with Sergio Mendoza on October 22, 2011. He also testified that there was "some kind of weapon across the handlebars of the bike [the " 'girl' "] was riding." He did not observe any other weapons.

Defendant also testified. He stated he went camping with Ramirez and Smith. On the afternoon of October 22, 2011, he and Ramirez left camp on trail bikes. The bike defendant rode was not "street legal." Defendant brought no weapons. Ramirez brought a rifle strapped to her back and a shotgun across the front of her motorcycle.

Defendant testified his license was suspended at the time Bird stopped him. Defendant initially testified that both he and Ramirez were wearing jackets. He later testified that he did not recall whether he actually had a jacket. He said he "might have had just a heavier sweatshirt or something." He then testified he didn't "believe" he "actually had to take a jacket off." Ramirez, however, did take her jacket off when Bird had asked for her driver's license.

---

[5] Bird testified that Ramirez was "quite a bit smaller" than defendant, and that the jacket would have fit defendant.

4.

**Stipulation Regarding Defendant's Prior Convictions**

During trial, the court read a stipulation between the parties regarding defendant's prior convictions. The parties stipulated that defendant was previously convicted of violating: (1) section 245, subdivision (a)(1), assault with force or weapon other than a firearm likely to cause great bodily injury on July 25, 2007; (2) section 12021, subdivision (a)(1) felon in possession of a firearm on June 15, 2010; (3) section 243, subdivision (d) battery causing serious bodily injury on June 15, 2010; and (4) section 245, subdivision (a)(1) assault with force or weapon other than a firearm likely to cause great bodily injury on June 15, 2010.

**Trial Court Instructs Jury with CALCRIM 371**

The court instructed the jury with CALCRIM 371 as follows:

"If the defendant tried to create false evidence or obtain false testimony, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However, evidence of such an attempt cannot prove guilt by itself.

"If someone other than the defendant tried to create false evidence, provide false testimony, or conceal or destroy evidence, that conduct may show the defendant was aware of his guilt, but only if the defendant was present and knew about the conduct – knew about that conduct, or if not present, authorized the other person's actions. It is up to you to decide the meaning and importance of this evidence. However, evidence of such conduct cannot prove guilt by itself."

DISCUSSION

## I.

## NO PREJUDICE RESULTED FROM THE COURT'S CALCRIM 371 INSTRUCTION

Defendant contends the court erred in instructing the jury with CALCRIM 371. He contends the evidence was insufficient to support the instruction. We hold that, at most, the instruction was unnecessary surplusage and affirm.

When the Supreme Court has considered similar challenges to instructions regarding fabrication of evidence, it analyzes potential prejudice first, often obviating the need to determine whether the instruction was erroneously given. (E.g., *People v. Crew* (2003) 31 Cal.4th 822, 848-849, *People v. Jackson* (1996) 13 Cal.4th 1164, *People v. Pride* (1992) 3 Cal.4th 195, 248-249.) We will do the same here.

In *People v. Pride*, *supra*, 3 Cal.4th 195, the trial court instructed the jury that consciousness of guilt may be inferred from any attempt by defendant to fabricate evidence at trial. (*Id.* at p. 248.) Defendant argued that conflicting testimony did not "support the instructional inference." (*Ibid.*) The Supreme Court assumed arguendo that defendant's assessment of the testimony was true, but concluded any error was harmless. (*Ibid.*) "[A]t worst, there was no evidence to support the instruction and … it was superfluous." (*Id.* at p. 249.)

We reject defendant's claim on the same grounds. Even if there was insufficient evidence supporting the fabrication of evidence instruction, the error was harmless. The instruction merely permits the jury to make a consciousness-of-guilt inference *if* they find defendant tried to obtain false testimony. (See CALCRIM 371.) The conditional (i.e., permissive) nature of the inference was reinforced by the court's explanation that some of the instructions may not apply, depending on the jury's findings.[6] We assume juries

---

[6] In his reply brief, defendant argues that even if there was otherwise sufficient evidence to support the instruction, that evidence became insufficient "when the court did

understand and faithfully follow instructions. (*People v. Delgado* (1993) 5 Cal.4th 312, 331.) Thus, if there was no evidence of fabrication, the jury would not have made the consciousness of guilt inference. If there was evidence of fabrication, the instruction was properly given. Either way, we affirm.

### Prosecutor's Comments Regarding Defense Counsel's "Role"

Defendant also claims the prosecutor improperly disparaged defense counsel. Specifically, defendant cites the prosecutor's comment that defense counsel's "role is to get her client off the hook.… Nothing about justice being done or anything like that, or even to show you reasonable doubt. Her job is to get – give you as much as she possibly can and to provide a reasonable doubt – any kind of reason to doubt whatsoever. Throw a little of this out, throw a little of that out, see what happens."

First, defendant did not object to these remarks and forfeited any claim of misconduct. (See *People v. Tully* (2012) 54 Cal.4th 952, 1021.)

Second, defendant mischaracterizes the prosecutor's remarks. He argues "[i]t is misconduct for the prosecutor to accuse defense counsel of fabricating a defense [citations], or to imply that defense counsel is free to deceive the jury. [Citation.]" That is not what the prosecutor did here. Arguing that defense counsel's role is to " 'get their clients off' " is not equivalent to accusing them of deception. (See *U.S. v. Russell* (10th Cir. 1997) 109 F.3d 1503, 1514.) Rather, the prosecutor was emphasizing defense counsel's role as an advocate for her client rather than a disinterested truth-seeker.

---

not identify … the specific fabricated evidence referred to in the jury instruction .…" We disagree. The court was correct to avoid specifically identifying potentially fabricated evidence. "[A] trial court's instruction on … a permissive inference with reference to the specific facts of the case is comparable to a restrained form of judicial comment on the evidence." (*People v. Roder* (1983) 33 Cal.3d 491, 506.)

Indeed, the prosecutor's comments are not such a distortion of defense counsel's role.  (See *ibid*.)  "If [defense counsel] can confuse a witness, even a truthful one, or make him appear at a disadvantage, unsure or indecisive, that will be his normal course.  Our interest in not convicting the innocent permits counsel to put the State to its proof, to put the State's case in the worst possible light, regardless of what he thinks or knows to be the truth.  Undoubtedly there are some limits which defense counsel must observe but more often than not, defense counsel will cross-examine a prosecution witness, and impeach him if he can, even if he thinks the witness is telling the truth ….  In this respect, as part of our modified adversary system and as part of the duty imposed on the most honorable defense counsel, we countenance or require conduct which in many instances has little, if any, relation to the search for truth."  (*U.S. v. Wade* (1967) 388 U.S. 218, 257-258 (conc. & dis. opn. of White, J.), fns. omitted.)

### Alleged *Doyle*[7] Error

Defendant next claims the prosecutor committed *Doyle* error by using defendant's postarrest silence for impeachment purposes.  First, defendant did not object and thereby waived this claim.  (See *People v. Castaneda* (2011) 51 Cal.4th 1292, 1333.)  Second, no *Doyle* error occurred.  Defendant testified that he was never read his "rights."  "[T]he Constitution does not prohibit the use for impeachment purposes of a defendant's silence … after arrest if no *Miranda* [*v. Arizona* (1966) 384 U.S. 436] warnings are given …."  (*Brecht v. Abrahamson* (1993) 507 U.S. 619, 628.)[8]

---

[7] *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*).

[8] The two contrary cases cited by defendant are unpersuasive.  The first case, *People v. Gaines* (1980) 103 Cal.App.3d 89, is no longer applicable after the passage of Proposition 8.  (See *People v. O'Sullivan* (1990) 217 Cal.App.3d 237, 240.)  The second case, *U.S. v. Whitehead* (9th Cir. 2000) 200 F.3d 634, 638-639 (*Whitehead*), appears to conflict with *People v. Medina* (1990) 51 Cal.3d 870, 889-890, (*Medina*).  In *Medina*, our Supreme Court noted that "*once Miranda* [] *warnings have been given*, it may be constitutionally improper to introduce evidence of an accused's post arrest silence."

**Prosecutor's Comments Regarding Witness Smith "Lying"**

Defendant claims the prosecutor improperly interjected personal beliefs regarding credibility when cross-examining witness Smith. Defendant cites the following portion of the prosecutor's cross-examination:

> "[THE PROSECUTOR:]  Why did you wait until two days before trial to give this statement instead of calling the police the next day, the day after, the day after, the month after?
>
> "[SMITH:]  Because I know that he's not supposed to be in possession of one and she was accusing him of being in possession of one. Who am I supposed to contact?  Am I supposed to contact her supervisor and say she did a wrong thing and she is making everything up?  Where is that going to get me?
>
> "[THE PROSECUTOR:]  You didn't try, did you?
>
> "[SMITH:]  Would you have tried?
>
> "[THE PROSECUTOR:]  I'm not on the witness stand right now. [¶]  The answer is yes.  I would have tried right away.  But how about you, with your own flesh and blood?  You didn't, did you?
>
> "[SMITH:]  No.
>
> "[THE PROSECUTOR:]  And that's because it is a lie.  What you are saying here is a lie, and you have just come in behind –
>
> "[DEFENSE COUNSEL:]  Objection.  This is argumentative.
>
> "THE COURT:  I'll sustain that."

Contrary to defendant's argument, " '[t]he prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence … [and] to argue on the

---

(*Medina*, 51 Cal.3d at p. 890, italics added.)  But the record in that case "fail[ed] to show that defendant was given *Miranda* warnings .…" (*Ibid*.)  To the extent *Whitehead* and *Medina* conflict, we follow the latter (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456), not the former (see *People v. Clark* (2011) 52 Cal.4th 856, 967).

basis of inference from the evidence that a defense is fabricated ....' " (*People v. Boyette* (2002) 29 Cal.4th 381, 433.) "It is not misconduct ... for the prosecutor to comment on the credibility of defense witnesses, if such comments are based on the evidence." (*People v. Sloan* (1963) 223 Cal.App.2d 96, 99.)

However, the prosecutor's statement about Smith lying was an argumentative "speech to the jury masquerading as a question." (*People v. Chatman* (2006) 38 Cal.4th 344, 384.) The trial court properly sustained defense counsel's objection that the comments were argumentative.

But the statements were objectionable because they were made during examination of a witness, not because they conveyed information the jury should never hear. We hold the prosecutor's error was harmless because the comments were not inherently prejudicial.

### Prosecutor's Comments Regarding Ramirez's Absence from Trial

Defendant complains that the prosecutor improperly highlighted Ramirez's absence from trial during closing argument.

Defendant did not object and thereby waived this claim. (See *People v. Castaneda*, *supra*, 51 Cal.4th at p. 1333.) Moreover, the prosecutor's comments were not improper. Rather, "the prosecutor was merely making the permissible argument that defendant had failed ' "to introduce material evidence or to call logical witnesses" ' [citation] to support his story ...." (*People v. Boyette*, *supra*, 29 Cal.4th at p. 434.)[9]

### Prior Convictions

Defendant also claims the prosecutor improperly utilized his prior convictions which were the subject of a stipulation. He cites the following colloquy:

___

[9] Likewise, the prosecutor's argument that defendant presented no evidence impugning Officer Bird was permissible.

"[Prosecutor]: You knew better back in '07 when you got convicted of your first felony assault. You knew then you shouldn't be around guns, right?

"[Defendant]: That's correct.

"[Prosecutor]: But you got convicted of being around guns. So why are you telling these people 'I know better' when you had been convicted in '07, and three years later it happens to you?

"[Defense counsel]: Your Honor, objection. This is argumentative and goes beyond the proper scope of the use of the felonies.

"THE COURT: I'll sustain the objection."

Defendant argues the prosecutor's question improperly spoke to propensity rather than credibility. This is incorrect. The prosecutor's question went to credibility.

The stipulation as to defendant's prior felonies included a 2007 felony conviction and a 2010 conviction for being a felon in possession of a firearm. Immediately prior to the dialogue cited above, defendant testified that he was not in possession of the shotgun on October 22, 2011. He then testified, "I have been in trouble for this before, and I know better. Do not possess a firearm. Do not be around it." The prosecutor's subsequent questions, which defendant criticizes here, were obviously meant to undermine defendant's claim. The prosecutor's questions effectively imply the following argument: defendant knew after his 2007 felony conviction that he should not be around guns, yet he was convicted for firearm possession in 2010; therefore you should not believe him now when he again says he knows better than to be around guns. This is a credibility argument (i.e., do not believe defendant's testimony that he "know[s] better").

**The Cumulative Effect of Any Error(s) was Not Prejudicial**

As we explained *ante*, no prejudice resulted from the trial court's CALCRIM 371 instruction. The only other "errors" identified by defendant were the two instances of argumentative questioning by the prosecutor outlined above. In both instances, objections were sustained. The court instructed the jury: "If I sustained an objection,

11.

you must ignore the question." The court also instructed the jury that the attorneys' questions were not evidence. "We assume the jury followed these instructions" and thereby avoided any prejudice. (*People v. Chatman*, *supra*, 38 Cal.4th at p. 405.)

## II.

## THE COURT DID NOT FAIL TO TAKE AN ADMISSION ON THE PRIOR CONVICTIONS

Defendant contends the trial court erroneously failed to take admissions on the prior conviction enhancements. Defendant concedes he admitted the prior convictions but contends the admissions related to the felon status element of counts I and II, not the prior conviction sentencing enhancements.

**Additional Facts**

Shortly before trial began, the following colloquy occurred:

"THE COURT: So with that understanding, Mr. Boykin [defendant], that you'd be giving up all those Constitutional rights and the consequences of the admissions that I have described to you, do you still intend to admit the prior convictions that are alleged in the Second Amended Information?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: All right. [¶] Then I'll ask you, Mr. Boykin, as to Count 1, it alleges a conviction from Stanislaus County on July 25th, 2007 for a violation of 245(a)(1). [¶] Do you admit or deny that allegation?

"THE DEFENDANT: I admit it, Your Honor.

"THE COURT: With respect to the June 15th, 2010 allegation of a prior conviction on that date for a violation of Section 12021(a)(1) of the California Penal Code in Stanislaus County, do you admit or deny that?

"THE DEFENDANT: I admit, Your Honor.

"THE COURT: With respect to the allegation on June – conviction on June 15th, 2010, violation of Section 243(d) in Stanislaus County, Mr. Boykin, do you admit or deny that?

"THE DEFENDANT: Admit that, Your Honor.

12.

"THE COURT: With respect to the June 15th conviction for a violation of Section 245(a)(1) in Stanislaus County, do you admit or deny that allegation?

"THE DEFENDANT: I admit, Your Honor.

"THE COURT: With respect to Count 2, Mr. Boykin, the – that count alleges those same prior convictions as elements of the offense. And I'm not going to read each one, but do you admit all of the allegations in Count 2 just as I have read them to you in Count 1?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Same convictions on the same dates?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: All right. [¶] All right. Counsel, I'm not going to take an admission as to the 667.5(b) enhancements. They're all the same. [¶] Do you think that is necessary?

"MR. HOVATTER [prosecutor]: I do not, Your Honor.

"MS. WOODALL [defense counsel]: No, Your Honor. We would – we would stipulate he did serve a term in prison for those offenses."

**Analysis**

Section 1025, subdivision (a) requires that the court ask whether defendant "has suffered the prior conviction." (§ 1025, subd. (a).) The court did so, as outlined *ante*. And, in each instance, the defendant admitted the prior conviction. The admissions are "conclusive of the fact of [defendant] having suffered the prior conviction in all subsequent proceedings." (§ 1025, subd. (a).)

Defendant tries to avoid the clear import of his admissions by suggesting that his admissions "referenced only the felon status" element of the substantive counts, not the prior conviction enhancements. Defendant cites no authority for the notion that he admitted the prior convictions for one purpose (i.e., his felon status) but not another (i.e., prior convictions enhancements). To the contrary, the California Supreme Court has held

13.

that a " '[d]efendant's admission of [a] prior conviction[] is not limited in scope to the fact of the conviction[] but extends to all allegations concerning the [felony] contained in the information.' " (*People v. Jackson* (1985) 37 Cal.3d 826, 835-836.) Once defendant admitted the prior convictions, they were conclusively established for purposes of the felon status element of counts I and II, *and* the prior conviction enhancements. (See § 1025, subd. (a); *People v. Jackson*, *supra*, 37 Cal.3d at pp. 835-836.)

## III.

## DEFENDANT'S SENTENCE DOES NOT VIOLATE SECTION 654

Defendant contends that under section 654 he may only be punished for either possessing the firearm or the ammunition. We disagree.

Defendant argues that because his "convictions were based on a single act, section 654 prohibits multiple punishment." We reject defendant's premise. Possessing a firearm and possessing ammunition outside apart from that firearm are two separate acts. " '[S]imultaneous possession of different items of contraband' are separate acts" for purposes of section 654. (*People v. Jones* (2012) 54 Cal.4th 350, 358.)

In a related argument, defendant next claims his sole intent was to "possess a loaded firearm." But, defendant cites to no evidence he committed these two acts pursuant to the single objective of possessing a loaded firearm. Defendant did not testify as to his objective in possessing the firearm or the ammunition. To the contrary, he denied possessing either.

The principal case on which defendant relies, *People v. Lopez* (2004) 119 Cal.App.4th 132 (*Lopez*), is distinguishable. In *Lopez*, defendant was charged with unlawful possession of a firearm and unlawful possession of ammunition. (*Id.* at p. 134.) After defendant was convicted, the trial court imposed concurrent sentences for the firearm and ammunition counts. (*Id.* at p. 137.) The Court of Appeal stayed one of the sentences under 654. (*Id.* at p. 139.)

14.

However, in *Lopez*, all of the ammunition defendant possessed was loaded into the firearm. (*Id.* at p. 138.) This crucial fact was incorporated into *Lopez*'s holding: "*Where, as here, all of the ammunition is loaded into the firearm*, an[] 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*Ibid.,* italics added.) Conversely, in the present case, defendant also possessed ammunition outside of the firearm, in his jacket.

In sum, defendant committed separate physical acts by possessing the shotgun and the ammunition in his jacket. By its plain language, section 654 applies to multiple punishment of a single act. (See § 654 ["*An* act or omission … *the* act or omission.…"], italics added.) Even with the expansion of section 654's scope through case law, the statute does not apply to defendant's sentence.

## DISPOSITION

The judgment is affirmed.