Filed 10/7/14  P. v. Gutierrez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B245933 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA120807) |
| v. | |
| MIGUEL GUTIERREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dewey Lawes Falcone, Judge.  Affirmed.

William S. Pitman for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Miguel Gutierrez (appellant) appeals from the judgment following a jury trial in which he was found guilty of first degree murder (Pen. Code, § 187, subd. (a)), with a finding he personally and intentionally discharged a firearm proximately causing death (Pen. Code, § 12022.53. subds. (b), (c) & (d)), and of shooting at an inhabited dwelling house (Pen. Code, § 246). The jury found the offenses were committed for the benefit of, at the direction of, or in association with, a criminal street gang. (Pen. Code, § 186.22, subd. (b)(1)(C)).[1]

The trial court sentenced appellant to an aggregate term in state prison of 50 years to life. For the murder, the trial court imposed a 25-years-to-life term enhanced by a 25-years-to-life term for discharging a firearm proximately causing death. For shooting at an inhabited dwelling, the trial court imposed a concurrent term of 15 years to life.

### CONTENTION

In *Doyle v. Ohio* (1976) 426 U.S. 610 [96 S.Ct. 2240, 49 L.Ed.2d 91] (*Doyle*), the United States Supreme Court held the prosecution violates due process when it impeaches a testifying defendant with his postarrest silence after a *Miranda* warning. (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d (*Miranda*).) Appellant contends that in the circumstances, Los Angeles County Deputy Sheriff Kevin Acebedo's (Deputy Acebedo) reference at trial to appellant's refusal to speak to deputies concerning the shooting constituted impermissible comment on appellant's invocation of his right against self-incrimination under the Fifth Amendment. We conclude the contention is forfeited, and the judgment will be affirmed.

### BACKGROUND

Appellant testified at trial he is a Bell Gardens Locos gang member. The prosecution's trial evidence established that about 10:30 p.m. on St. Patrick's Day, March 17, 2010, appellant fired his .380-caliber handgun five times at four youths standing in front of an Ira Avenue, Bell Gardens, residence. Appellant was accompanied by fellow gang members, K.L., who remained in the car, and V.P., who got out of the car

---

[1] All further statutory references are to the Penal Code, unless otherwise designated.

at the same time as appellant. The Ira Avenue residence was a well-known White Fence gang hangout. During the shooting, one of the youths standing in the front yard, Alejandro Hernandez, was fatally wounded. One of the five discharged bullets entered the Ira Avenue residence, which was occupied by five or six persons, including children. The bullet pierced a window and an interior bedroom wall and narrowly missed the head of a sleeping adult.

Two eyewitnesses testified appellant was the gunman. One eyewitness, K.L., a fellow gang member and former close friend of appellant, testified under a grant of immunity that appellant was the gunman. C.L., one of the youths standing in front of the Ira Avenue residence, was also an eyewitness to the shooting.

C.L. made conflicting statements concerning his ability to identify the assailant to the deputies investigating the homicide, Deputy Acebedo and his partner, Deputy McElderry. In one of three six-pack photographic displays C.L. was shown, he made a tentative identification of appellant. At an August 17, 2010, pretrial live lineup and at the preliminary hearing, C.L. identified appellant as the gunman he saw during the shooting. During the investigation, C.L. told the homicide investigators the gunman used the gang moniker "Drowsy."

At trial, C.L. described the shooting as he had previously. However, he recanted with respect to identifying appellant as the gunman. The prosecution introduced into evidence C.L.'s prior in- and out-of-court identifications of appellant as evidence of appellant's guilt. The deputies had carefully recorded all of their out-of-court interviews with C.L. The recordings in which C.L. had identified appellant as the gunman were played for the jury at trial.

At trial, K.L. and C.L. testified that they had appeared as witnesses despite gang threats. A gang expert testified in the gang culture, the consequence of such cooperation with the authorities was death. K.L. was an admitted gang member; C.L. often behaved as if he were highly influenced by gang mores – he was probably at least a White Fence gang associate.

3

At trial, the prosecution presented some consciousness of guilt evidence. The forensic evidence from the scene established, and the observations by C.L. indicated, the gunman had used a .380-caliber semi-automatic handgun during the shooting. At appellant's home, the deputies recovered no handgun, but there was a .38-auto-caliber live round found in his dresser drawer. At some point before the August 17, 2010, live lineup, the deputies contacted appellant and asked to speak to him. Appellant refused to cooperate in an interview. In making the request, the deputies informed appellant they were investigating the March 17, 2010, shooting.

Shortly before or after the August 17, 2010, live lineup, appellant was placed in a holding cell with one of his trusted gang cohorts, Alberto "Boxer" Garcia (Garcia). Their conversation was recorded. Appellant asked Garcia whether gang members still had his ".380."

In October 2010, in a telephone conversation from jail with a female gang associate, appellant referred to a conversation he had had with V.P. in a holding tank in East Los Angeles. V.P. claimed the deputies had contacted him and told him they had no evidence linking V.P. to the shooting. However, the deputies wanted V.P. to implicate "Drowsy" as the assailant. Appellant told the female gang associate he did not know how the deputies had discovered his moniker, "Drowsy." He explained on all occasions in which the authorities had contacted him during consensual field encounters, he had identified himself as "Lil' Scrappy," not "Drowsy," the latter being his actual gang moniker. He warned the female gang associate not to hang out with certain persons or to discuss her conversation with appellant as these persons might be "snitching."

In defense, appellant personally testified, denying the murder and asserting defenses of alibi and misidentification. Appellant presented one defense witness, a female friend, who fully corroborated his alibi. The friend testified she was with appellant all evening until 12:00 a.m. on March 17, 2010. Earlier, they were at her mother's birthday party; later, they went to a park and sat together in a car talking and smoking marijuana. The alibi witness's mother provided appellant with a partial alibi.

4

Appellant attempted to impeach C.L.'s testimony by calling two Bell Gardens police officers who had obtained the assailant's description from C.L. immediately after the shooting.

## DISCUSSION

Appellant contends "[e]vidence of appellant's invocation of his Fifth Amendment right to silence and the improper comments on his silence in response to police questioning violated his right to remain silent, caused 'intolerable' prejudice and was not harmless beyond a reasonable doubt."

1. *Background.*

During Deputy Acebedo's direct testimony, the deputy explained he and his partner had arranged for Garcia to be placed in a cell with appellant prior to the live lineup. The deputies had appellant's and Garcia's conversation recorded. Deputy Acebedo explained Garcia was not suspected of participating in the shooting. The deputies were attempting to obtain admissions from appellant concerning his involvement in the shooting.

As background for the deputy's testimony on this point, the prosecutor questioned the deputy to establish appellant was aware when he spoke to Garcia that there was a pending homicide investigation. The questioning was, as follows.

"Q. [The prosecutor:] Did you ever inform [appellant] that you were investigating? [¶] A. [Deputy Acebedo:] Yes. [¶] Q. You made it clear you were investigating a murder that had happened on March 17, 2010, on Ira [Avenue]? [¶] A. Yes. [¶] Q. Do you recall the date that you provided [appellant] with that information? [¶] A. No, I don't remember." The prosecutor then had Deputy Acebedo testify the live lineup had occurred on August 17, 2010, to establish the time when appellant would have become aware of the police investigation.

Trial counsel did not object to the above testimony.

Later, during cross-examination, trial counsel broached the subject of whether appellant had used different monikers during his consensual encounters with police officers preceding the homicide. Trial counsel inquired of Deputy Acebedo, "So you're

5

not saying that [appellant] made up this name Lil' Scrappy [*sic*] in anticipation that someday he might be found out as Drowsy, are you?" Deputy Acebedo replied, "I can't say that one way or another. We tried to interview [appellant], and he wouldn't speak to us."

The trial court had the jury step out of the courtroom.

Trial counsel complained of error and made a motion for a mistrial. Trial counsel said: "Your Honor, [Deputy Acebedo's] answer to this question lets the jury know that my client, who has a right not to talk to anybody, who has a right to invoke his right to counsel, in refusing to do that puts in the minds of the jury why is that, and it goes into an area that he's not allowed to testify to, and he knows that. The D.A. knows it, which is why the D.A. structured his questions of him the way he did and in terms of him trying to answer that question a little sooner. So I'm going to ask for a mistrial at this point . . . because it's going to put in the mind of the jury that this guy knew he was being investigated, he chose not to talk to the police, and they don't have the right to do that."

The trial court commented: "It was inadvert in my opinion . . . . I will admonish the jury again, as I have done a couple of times, that anybody has the right not to speak to law enforcement without counsel, the privilege against self-incrimination; they're not to consider that question for any purpose whatsoever."

Trial counsel requested that in admonishing the jury, the trial court refrain from referring to appellant's right against self-incrimination. Trial counsel said he believed referring to self-incrimination might suggest in appellant's case, speaking to the police would involve self-incrimination. Trial counsel suggested the trial court tell the jury appellant has the right not to speak to the police "period," and the jury cannot take the deputy's testimony into account during deliberations.

In response, the trial court admonished the jury as follows.

"I want to admonish the jury regarding a particular issue. We've talked about this a little bit, but the defendant and anybody has the right not to talk to anybody about any matters whatsoever. So do keep that in mind. You are not to consider the question posed

6

or the answer given when you deliberate in this matter. Nobody is obligated to speak to anybody if they're not inclined to do so."

2. *The relevant legal principles*.

a. *The United States Supreme Court authorities.*

The Fifth Amendment to the Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." (U.S. Const., 5th Amend.)

In *Griffin v. California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] (*Griffin*), the high court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." (*Griffin*, at p. 615.) In reaching this decision, the high court observed that "comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' [citation] which the Fifth Amendment outlaws. It is a penalty imposed . . . for exercising a constitutional privilege [and] . . . cuts down on the privilege by making its assertion costly." (*Id*. at p. 614, fn. omitted.)

The substantive use of postarrest, post-*Miranda* warnings silence is impermissible in federal prosecutions as a matter of the federal court's supervisory power. (See *Wainwright v. Greenfield* (1986) 474 U.S. 284, 291, fn. 5 [106 S.Ct. 634, 88 L.Ed.2d 623] (*Wainwright*); *Doyle*, *supra*, 426 U.S. 610 [the parties conceded in *Doyle* substantive use of a defendant's silence may not be used where the defendant fails to testify].)

In *Wainwright*, the court stated it was not contested that "a prosecutor may legitimately inquire into and comment upon 'purely "demeanor" or "behavior" evidence.' " (*Wainwright*, *supra*, 474 U.S. at p. 295, fn. 13.)

In *Doyle, supra*, 426 U.S. 610, the court held it violated the Fourteenth Amendment's due process clause to impeach a testifying defendant with his exercise of *Miranda* rights following his arrest. The court in *Doyle* did not rely on the contention the state had violated the defendants' Fifth Amendment privilege against self-incrimination by asking the jury to draw an inference of guilt from the exercise of their constitutional

7

right to remain silent.  *Doyle* rests on " 'the fundamental unfairness of implicitly assuring a suspect [in a *Miranda* warning] that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.' "  (*Wainwright, supra,* 474 U.S. at p. 291.)

Notably, following *Doyle*, the United States Supreme Court found no "fundamental unfairness" where a defendant testifies and is impeached by use of pre-*Miranda* warning silence, either before arrest, *Jenkins v. Anderson* (1980) 447 U.S. 231 [100 S.Ct. 2124, 65 L.Ed.2d 86], or after arrest, *Fletcher v. Weir* (1982) 455 U.S. 603 [102 S.Ct. 1309, 71 L.Ed.2d 490], or where there is a partial invocation of the privilege while making a post-*Miranda* warnings statement, *Anderson v. Charles* (1980) 447 U.S. 404 [100 S.Ct. 2180; 65 L.Ed.2d 222] (*Anderson*) [cross-examination respecting inconsistent postarrest statements "makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent").  However, in *Fletcher*, the court made clear the *Doyle* rule permitting impeachment applied only after a defendant was given his *Miranda* rights.  (*Fletcher,* at p. 607.)  Also, that court said that commensurate with the due process clause, a state "is entitled . . . to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony."  (*Ibid*.)

In the recent decision in *Salinas v. Texas* (2013) 570 U.S. ___ [133 S.Ct. 2174, 186 L.Ed.2d 376] (*Salinas*), the defendant voluntarily answered questions posed by the police in a noncustodial interrogation, except for one question he declined to answer. At trial, the defendant did not testify, but the prosecution used the defendant's nonverbal reaction to the question as substantive evidence of guilt.  (*Salinas, supra*, 133 S.Ct. at p. 2178.)  In a plurality opinion authored by Justice Alito, the United States Supreme Court held that a suspect who desires the protection of the Fifth Amendment privilege must expressly invoke the privilege when he purportedly relied on it — at the time of the interview.  (*Salinas*, *supra*, 133 S.Ct. at pp. 2179-2181.)  The court did not reach the issue of whether the prosecution may use a defendant's assertion of the privilege against

8

self-incrimination during a noncustodial police interview substantively -- as part of its case in chief.  (*Salinas*, 133 S.Ct. at p. 2179.)

b.  *California postarrest pre-*Miranda *silence*

Following the decision in *Doyle*, the California courts adopted a rule that forbade cross-examination or commentary on a defendant's postarrest silence whether a *Miranda* warning was given or not.  (See *People v. Delgado* (1992) 10 Cal.App.4th 1837, 1841 (*Delgado*).)  After Proposition 8, the Truth-in-Evidence law, however, evidence of silence was deemed admissible unless the silence occurred after a *Miranda* warning. (*Delgado,* at p. 1841*; see also, People v. O'Sullivan* (1990) 217 Cal.App.3d 237, 244-245 [limiting the exclusion of evidence of postarrest silence to circumstances in which the federal law would compel exclusion, i.e., following *Fletcher*, if no *Miranda* warning has been given, evidence of the accused's silence is admissible to impeach a defense offered for the first time at trial].)

Recently, the California Supreme Court decided *People v. Tom* (2014) 59 Cal.4th 1210 (*Tom*).  There, the Supreme Court reviewed a decision by the California Court of Appeal, which held the substantive use of a defendant's silence in a postarrest, pre-*Miranda* context should be deemed an exercise of the privilege and found the defendant's Fifth Amendment rights had been violated.  At trial in *Tom*, the defendant did not testify, and the prosecutor elicited critical evidence of postarrest silence prior to *Miranda* warnings and then commented on that evidence during final argument to the jury.  (*Tom,* at pp. 1215-1223.)

In a 4-3 decision, the California Supreme Court declined to address the issue of whether the prosecution can use a defendant's postarrest, pre-*Miranda* silence in its case in chief as evidence of guilt.  It declined to address the issue as the circumstances of the silence failed to show the defendant had made a clear invocation of the privilege at the time of his defacto arrest.  (*Tom, supra*, 59 Cal.4th at pp. 1225, 1235.)

In reaching its decision, the *Tom* court examined the state and federal cases concerning the substantive use of postarrest, pre-*Miranda* silence.  It concluded these authorities are conflicting.  (*Tom, supra*, 59 Cal.4th at pp. 1223-1225.)

9

c. *California prearrest pre*-Miranda *silence.*

In California, the cases generally follow the principle announced in *Jenkins, supra,* 447 U.S. 231. "Prearrest silence may be commented upon unless the court finds the silence was an invocation of Fifth Amendment rights. Prearrest silence in circumstances in which there is no inference of a reliance on the right to silence may be used to impeach by way of cross-examination." (*People v. Free* (1982) 131 Cal.App.3d 155, 165 [cross-examination on defendant's fleeing and failing to contact authorities used to discredit claim of self-defense]; see also *People v. Givans* (1985) 166 Cal.App.3d 793, 801 ["prearrest silence can be used to impeach the defendant's trial testimony unless the court finds the silence was an invocation of Fifth Amendment rights"]; *People v. Burton* (1981) 117 Cal.App.3d 382, 385-387 [a defendant's prearrest failure to explain incident in question properly used to impeach testimony he acted in self-defense].)

In a recent decision in *People v. Waldie* (2009) 173 Cal.App.4th 358, 364 (*Waldie*), the court commented the substantive use of pre-custody/pre-*Miranda* silence in the prosecution's case-in-chief may violate the Fifth Amendment. (*Waldie*, at pp. 365-366.) However, the *Waldie* court resolved the issue there by finding any error to be harmless beyond a reasonable doubt. (*Id*. at pp. 366-367.) In *People v. Ramos* (2013) 216 Cal.App.4th 195, 206-207 (*Ramos*), the court observed there is authority that where a defendant specifically invokes the Fifth Amendment in a pre-custody context, the state is precluded at trial from use of that statement for substantive or impeachment purposes. (*Ramos,* at pp. 206-207.) In *Ramos*, there was no record from which to infer an invocation of the right to remain silent. But the court reversed the judgment as the People conceded there was also *Doyle* error, and the court found that error to be prejudicial. (*Ramos,* at pp. 206-207.) [2]

---

[2] Although the United States Supreme Court has held the government may comment on a defendant's prearrest silence for impeachment purposes, it has yet to rule on the constitutionality of the use of prearrest, pre-*Miranda* silence as substantive evidence of guilt. (See *Waldie*, *supra*,173 Cal.App.4th 358, 364.) On this issue, the federal authorities are conflicting. (See cases cited in *United States v. Okatan* (2nd Cir. 2013) 728 F.3d 111, 117-118.) The Ninth Circuit has held there is no bar to the use of a

10

3. *The analysis*.

   a. *Forfeiture.*

With respect to the initial testimony cited by appellant as error, respondent argues a forfeiture. We agree. On direct examination, trial counsel failed to enter an objection to Deputy Acebedo's testimony. It is well-settled the failure to enter a timely and specific objection to the testimony violating a defendant's Fifth Amendment rights results in a forfeiture of the issue on appeal. (*People v. Huggins* (2006) 38 Cal.4th 175, 198; *People v. Crandell* (1988) 46 Cal.3d 833, 877-879; cf. *People v. Johnson* (1989) 47 Cal.3d 1194, 1236 [*Griffin* error forfeited by lack of objection].)

Furthermore, as a practical matter, it is impossible for this court to address appellant's entire contention as the record fails to indicate the circumstances under which appellant made this purported invocation of a constitutional right. The admissibility of a defendant's refusal to cooperate in an interview will turn on a variety of factors: (1) whether the statement was made before or after the person is in custody and whether he is in custody in the particular case under investigation; (2) whether the purported invocation of the right to remain silent occurs before or after the person is advised of his *Miranda* rights; (3) whether the person is merely silent or has refused to cooperate in the interview in a manner suggesting the explicit invocation of his right to remain silent; (4) whether the person testifies at trial, and the prosecution uses the purported invocation of the right substantively or as impeachment; (5) whether the defense objection amounts to a due process or Fifth Amendment claim; and (6) whether the comment is admissible

_____

defendant's prearrest silence for substantive purposes. (*Waldie, supra*, 173 Cal.App.4th at p. 365.) But other circuits have held the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination. (*Waldie*, at pp. 365-366.) The latter decisions reason the application of the privilege is not limited to persons in custody or charged with a crime; it may also be asserted by a suspect who is questioned during the investigation of a crime. (*Waldie,* at p. 366, citing *Combs v. Coyle* (6th Cir. 2000) 205 F.3d 269, 283, superseded by statute, as stated in *Jones v. Trombley* (6th Cir. 2009) 307 Fed. Appx. 931, 933-934 & fn. 1.)

pursuant to state law where the United States Constitution fails to apply.  (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171; *Delgado, supra*, 10 Cal.App.4th. at p. 1843.)

There was no pretrial or Evidence Code section 402 hearing on the admissibility of Deputy Acevedo's testimony.  Our record otherwise contains none of the facts required to determine whether appellant was or was not in custody in the particular case, whether he was given a *Miranda* warning before his refusal to cooperate in the interview, and whether he was merely silent or explicitly said, or conducted himself in a manner suggesting, he was exercising his right to remain silent.  The only facts established on this record are appellant testified at trial and the prosecution used the deputy's testimony in part in the prosecution's case-in-chief.  The current law on issues of trial comment on a defendant's refusal to speak to the authorities is highly nuanced.  Without further facts, it is impossible for this court to determine whether the prosecutor violated appellant's Fifth Amendment right to remain silent.  (*Ramos, supra*, 15 Cal.4th at p. 1171; see *People v. Ramos*, *supra*, 216 Cal.App.4th at pp. 207-208.)

(b)  *The merits*.

The lack of an adequate record requires we reject appellant's contention.

Moreover, the prosecutor did not elicit the deputy's blurted-out comment during cross-examination and made no use of any of the complained-of testimony during his final argument.  (*People v. Thomas* (2012) 54 Cal.4th 908, 936 [a *Doyle* violation does not occur unless the prosecutor is permitted to use a defendant's postarrest silence against him at trial].)

But even if we found error, this is not a case where the error requires a reversal.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705]; *Waldie, supra*, 173 Cal.App.4th at pp. 366-367.)  In determining whether the error is harmless beyond a reasonable doubt, we consider the strength of the prosecution's case, the extent to which the statement was cumulative, the degree to which the prosecution emphasized the erroneously admitted evidence, and whether the trial court admonished the jury not to consider the evidence.  (See *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684 [106 S.Ct. 1431, 89 L.Ed.2d 674].)

The trial evidence is not weak as appellant claims. The circumstances of the murder itself were not contested and suggested a gang-related assault on rival gang members. There was motive evidence established by the background on gang violence testified to by a local gang expert Bell Gardens police officer. The eyewitness testimony was not infirm. One eyewitness, K.L., was a gang cohort and friend of appellant's, albeit he testified under a grant of immunity and probably to avoid his own prosecution. The other eyewitness, C.L., was a victim and behaved as if he were at least a White Fence associate, although he claimed he was not a gang member. At trial, C.L. recanted only with respect to his identifications of appellant as the gunman. However, the homicide investigators had carefully tape-recorded all of C.L.'s statements to them. The recorded statements were persuasive C.L.'s trial claims he could not identify the assailant and of police coercion were incredible. Both eyewitnesses testified they came to court in spite of threats to their personal safety, making it more likely they were telling the truth. Additionally, there was corroboration of appellant's guilt in the statements appellant made over the telephone from the jail and in person to his gang cohorts.

On a defense request, the trial court gave the curative admonition requested by trial counsel. In the admonition, the trial court charged the jury in effect that they should not consider the deputy's comment and could not draw an inference of a consciousness of guilt from appellant's refusal to cooperate in an interview with the deputies. This court presumes, as we must, the jury followed the trial court's admonition. The admonition would have cured any error. (See *People v. Clark* (2011) 52 Cal.4th 856, 859.) Moreover, the United States Supreme Court suggests following *Doyle* error, an objection and appropriate instruction to the jury ordinarily ensures that the defendant's silence will not be used for an impermissible purpose. (*Greer v. Miller* (1987) 483 U.S. 756, 764-765 [107 S.Ct. 3102, 97 L.Ed.2d 618].)

On this record, any error was harmless beyond a reasonable doubt.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

14